No. 17,450.

## THE BEDFORD BELT RAILWAY CO. *v.* BROWN.

| | |
|---|---|
| 142 | 659 |
| 142 | 597 |
| 143 | 385 |
| 142 | 659 |
| 149 | 24 |
| 152 | 400 |
| 142 | 659 |
| 156 | 181 |
| 142 | 659 |
| 159 | 668 |
| 142 | 659 |
| 164 | 516 |
| 142 | 659 |
| 166 | 275 |
| 142 | 659 |
| 169 | 682 |

CONTRIBUTORY NEGLIGENCE.— *Appellate Procedure.*—Contributory negligence on the part of plaintiff in an action for personal injuries will not be presumed where the complaint is attacked on appeal by an assignment of error in overruling defendant's motion in arrest of judgment, but no facts are alleged indicating that plaintiff was negligent, and there is an allegation that he was not negligent.

APPELLATE PROCEDURE.—*Complaint, Sufficiency Of.*—A complaint will not be held insufficient as against an objection first made on appeal, where it contains enough to bar another action.

MASTER AND SERVANT.—*Assumed Risk.—Construction of Railroad Bridge.*—An employe engaged in building a railway bridge, who knows that wedges used in the construction of a track on which heavy timbers are conveyed are liable to slip out of place, assumes the risk of injury from that cause.

SAME.—*Assumed Risk.—Construction of Railroad Bridge.*—An employer is not liable for an injury to an employe engaged in constructing a railroad bridge, caused by the slipping out of a wedge used in the construction of a track on which to convey heavy timbers, where the employe participated in the construction of the track and in the placing and use of the wedges, and knew of their liability to slip out.

SAME.—*Contributory Negligence.—Construction of Railroad Bridge.*—An employe engaged in constructing a railroad bridge is guilty of contributory negligence in failing to observe whether a wedge used in the construction of a track on which heavy timbers are conveyed, is out of place, so as to render the track unsafe, before attempting to convey such timber over it, where he knows that the wedge is liable to slip out of place.

From the Lawrence Circuit Court.

*F. M. Trissal*, for appellant.

*Dunn & Lowe*, for appellee.

HACKNEY, J.—This appeal is from a judgment, in favor of the appellee, for personal injuries sustained while employed by the appellant in the construction

of a railway bridge. The complaint charged that the appellee was employed in the construction of said bridge; that when about one hundred feet had been nearly completed, and several bents had been placed in position, boards were laid on either side, along the top, for the workmen to walk upon. "Between said running boards, on the top of said bridge and along the middle of it, from bent to bent, were laid two lines of stringers, side by side, and on the top of these stringers, lengthwise of them and of the bridge as well, were laid consecutively heavy planks, end to end," to be used as a track, upon which to move, from place to place, heavy timbers for the construction of the bridge; such timbers being so moved upon said track by means of a small, solid frame twelve inches square, with an iron roller adjusted beneath, and called a "dolly." It was averred that the appellant negligently and carelessly constructed said track, and negligently permitted the same to become and remain in an unsafe and infirm condition, unbraced, unsupported, and not properly leveled, and which condition was well known to appellant, and unknown to appellee, and which could and should have been repaired; that while he and other workmen were moving a large timber along said track, upon said "dolly," the appellee walking along one of the board walks so made along the top of said bridge, said "dolly" and the timber thereon, by reason of said defects in said track, became unbalanced, and fell from the bridge, hurling the appellee to the ground below, and inflicting the injuries complained of. It was alleged, also, that the appellant was guilty of no fault or negligence contributing to said injury.

There was no demurrer or motion addressed to the complaint in the lower court, and its sufficiency is

attacked here upon an assignment of error that the court overruled appellant's motion in arrest of judgment.

Appellant's learned counsel attack the complaint under the fellow-servant rule, the rule as to the assumption of the ordinary and the extraordinary risks of the service, and the rule as to contributory negligence. Where there is enough in a complaint to bar another action, it is sufficient against an attack first made in this court. *Harris* v. *Wright*, 123 Ind. 272; *Peters* v. *Banta*, 120 Ind. 416; *Chapell* v. *Shuee*, 117 Ind. 481; *Sims* v. *Dome*, 113 Ind. 127; *Donellan* v. *Hardy*, 57 Ind. 393. After verdict all intendments are taken in favor of the pleading, and the same rule applies where the attack is by motion in arrest, as where it is made for the first time upon assignment in this court. *Colchen* v. *Ninde*, 120 Ind. 88, and cases there cited. See also Elliott App. Proced., section 473.

We cannot presume, as counsel urge, that the appellee knew of the defects, in the face of the allegation that he did not know of them. Without such knowledge, there could be no assumption of the hazard as an extraordinary risk of the service. If we accept the rules above suggested, we cannot presume that the appellee had participated in the construction of the track, or that he was a fellow-employe of those who did construct it, or even that he was an employe at the time of such construction. The fellow-servant rule, therefore, cannot be invoked. No facts appear to indicate that appellee was negligent, and he alleges that he was not negligent. We cannot, therefore, presume contributory negligence. It is not claimed that any essential fact is wholly omitted. We cannot concur in appellant's position that the complaint did not state facts sufficient to bar a second action for the same injuries. If the complaint were tested upon demurrer, we should not feel safe in

the conclusion that its facts were sufficient to constitute a cause of action.

A conflict between the general verdict and answers to interrogatories is claimed, and is urged as sustaining appellant's motion for judgment *non obstante.* Finding it necessary to reverse the judgment of the lower court, and, believing that this question will not arise again in the cause, we pass it without decision.

The cause was tried and submitted to a jury, upon the testimony introduced on behalf of the appellee. The following facts were established without conflict : The appellant engaged in the construction of a railway bridge, and the labor thereon was performed by a foreman, the appellee, and two or three other bridge carpenters. The work had proceeded to the point where twelve or fourteen bents had been constructed, and another was being added. Upon these bents, and extending from one to another, as they were constructed, the appellee and his fellow-workmen laid, near the center, two timbers, side by side, each timber being sixteen inches wide and sixteen feet long. Upon these timbers were placed, lengthwise and end to end, oak boards three inches thick by ten inches wide. The timbers and boards so laid constituted a track upon which to transport, by means of a small but heavy carriage, the timbers from which the bridge was constructed. On the outer edges of the bents, and on either side of this track, were laid board walks for the workmen to walk upon in the discharge of such duties as required them to be upon the superstructure. In the top course of the track it was found that the ends of the boards would vary in thickness, and would make uneven joints. In order that these joints might be even, and afford a smoother course for the timber carriage, the appellee and his fellow-workmen would insert, under the thinner boards, a

wedge, or shim, of such thickness as would bring the upper surfaces of the boards, at the ends, upon a level each with the other.   In the use of this track, from time to time, these wedges, or shims, would work out from their places; and, to maintain a smooth track, all of the workmen, including the appellee, observed the condition of the joints and the positions of the wedges, or shims, and, when necessary, replaced them.   These wedges, or shims, if displaced, could easily be seen by any one who would look at the joints.

This work, in which the appellee engaged, proceeded from the 26th day of December, 1892, until the afternoon of March 9, 1893.   This method of transporting timbers was the usual and customary method in bridge building.   The day of appellee's injury, he had frequently been upon the superstructure and along the course of the track.   The foreman had, likewise, been upon the superstructure and along the course of the track several times during the day, and had directed the work for that particular afternoon.   The work so directed was in the transportation of timbers.   In this, the appellee and two other workmen were engaged; and, at the time of the misfortune, the appellee was upon one of said board walks, the other two workmen were pushing and guiding the timber carriage with a large timber upon it.   The appellee was proceeding towards the extended end of the timber, to assist in pushing and guiding it, though he had not come nearer than four feet from it when the carriage came upon a joint in the track, from which a wedge or shim had worked and left the joint uneven.   In meeting this uneven joint, the carriage was jolted, and the timber thereon toppled and fell from the superstructure.   In its fall it struck the board upon which the appellee was walking, and so jarred and disturbed it as to precipitate the appellee to

the water below, a distance of fifty-three feet, and from which he suffered the injuries complained of. When the carriage had gotten upon the uneven joint, the appellee could not see that the wedge or shim had worked out.

The question is presented as to whether, upon these facts, the verdict should have been for the appellee.

The ordinary rule urged by the appellee, that this court will not determine the weight of conflicting evidence is not available to support the verdict, since, as we have shown, the evidence is without conflict and presents the case, upon the facts stated, in as favorable a view for the appellee as possible. The question of the appellant's liability, therefore, is not one of fact for the exclusive decision of the jury, but is one of law upon which the lower court could, and this court must pass. *Faris* v. *Hoberg*, 134 Ind. 269 ; *Ohio, etc., R.. W. Co.* v. *Dunn*, 138 Ind. 18 ; *Day* v. *Cleveland, etc., R. W. Co.*, 137 Ind. 206.

That the facts should warrant a recovery it was indispensable that the appellee should establish, by the evidence, some duty owing to him at the time, by the appellant, the breach of which resulted in the injury complained of, and that he had not by his own negligence contributed to the injury. It is inconceivable that there should be a liability without a breach of duty. Not only so, but, if it be found that there is some breach of duty on the part of the master, and it be further found that with a knowledge of this breach the servant continues in the service, not notifying the master of the breach, and receiving no assurances that the defect or negligence will be repaired, the servant will be deemed to have assumed the hazard of such defect or breach, and to have waived a right of recovery for injury therefrom. *Evansville, etc., R. R. Co.* v. *Duel*, 134 Ind. 156 ;

*Ames, Admr.*, v. *Lake Shore, etc., R. W. Co.*, 135 Ind. 363; *Lynch* v. *Chicago, etc., R. R. Co.*, 8 Ind. App. 516.

What duty of the appellant was violated? The appellee seeks to uphold the verdict and judgment in his favor, upon the assumption that the appellant was negligent in not keeping the wedges in place. The argument is that the place for the performance of the labor was unsafe, and that the foreman was a vice-principal, and neglected to keep the wedges in place.

It is the general rule that it is a duty of the master to supply safe places and appliances for the service of his employes, but it is not understood that this duty requires the master to make a powder-house a place of safety or to make railroading as free from danger as hoeing corn or to make the labor of bridge building, at fifty-three feet above the ground, as free from hazard as the service of an office clerk. Every service has its own peculiar hazards and the law does not hold the master accountable for such hazards as ordinarily and naturally belong to any service. Here the direct and only cause of the injury was in the displacement of a wedge. The injury was due not to the ordinary nor to the extraordinary dangers of the place of service, but simply to the manner of using the ordinary instrumentalities of the service. It was not complained, nor was it in evidence, that the use of wedges or shims was required by the master when another appliance would have been safer. Neither was it a question that the master supplied the wedges or shims. On the contrary it was an established fact that the method adopted for the transportation of the timbers was the usual and ordinary method; and the appellee, without misdirection from the appellant or ignorance on his part, participated in the construction of the track and in the placing and use of the wedges, with every opportunity to know their hazards that the

appellant or its servants possessed.    No imperfection in
timber, tools or appliances, as supplied by the company,
is even suggested.    It is perfectly clear that the injury
was not caused by any breach of duty on the part of the
company in supplying a dangerous place to work or
unsafe tools or appliances.    It was not the theory of the
action that the company had been guilty of a breach of
duty in employing an unskilled or careless servant nor
did the evidence tend to support such a theory.    But it
is said that the foreman was a vice-principal and neg-
lected to keep the wedges in place.    There is no vice-
principal where the duty owing is not one devolved upon
the master.    *New Pittsburg Coal, etc., Co.* v. *Peterson,*
136 Ind. 398, and authorities cited.    We have already
demonstrated that the duty neglected was not one rest-
ing upon the master.    It did not arise from an obligation
to supply a safe place or safe appliances.    The rule may be
broadly stated that the master is never liable for failing to
supply a safe place for the servant to work when the work
consists in making safe the place and the condition of
which he complains.    One engaged in constructing a rail-
way cannot complain that he was injured by reason of the
failure of the company to have a completed railway.
*Evansville, etc., R. R. Co.* v. *Henderson,* 134 Ind. 636.
Nor can one employed in mining coal, and who is supplied
with timbers to make safe the roof of the apartment in
which he works, complain of injuries received from slate
falling because such timbers are not put in place by
him.    *Coal Co.* v. *Estievenard,* (O.) 40 N.E. Rep. 725.    Nor
can a laborer digging a trench, and thereby making the
place in which he works, recover for personal injuries
resulting from the falling of the sides of the trench.

We might stop at this point, since we think it is clear
that the appellee failed to show the breach of any duty
owing to him by the appellant, but, as we have seen that

the injury resulted from the manner in which the proper appliances for the work were employed, it is apparent that those who carelessly employed such appliances are blamable. The appellee knew the character of the track and the necessity for care to keep the wedges in place when running the carriage over the track. He participated in running the carriage without observing the condition of the joints, and by this failure is himself blamable. He and the other workmen had from time to time taken care, as they used the track, to see that the wedges were in place; no particular person had been designated to keep them in place and the exigencies of the occasion did not deny the appellee the opportunity of observing the condition of the track before taking the risk of running heavy timbers upon it and that he did so take the risk was either contributory negligence or the assumption of the hazard. As we have shown, either contingency is fatal to his recovery.

He had every opportunity that the appellant had of knowing the tendency of the wedges to work out and render the track unsafe, and continued in the service with no promise of a different method of maintaining a smooth track. In so continuing with such knowledge, he assumed the hazard and waived liability. *Ames* v. *Lake Shore, etc., Co., supra,* and cases there cited; *Day* v. *Cleveland, etc., Co., supra,* and cases there cited. As said in the last cited case: "In a case where the servant is one of mature age and experience, as in this case, the law never imposes the duty on the master of becoming eyes and ears for his servant, where there is nothing to prevent the servant from using his own eyes and ears to avoid danger." Again it is said: "The law requires that men shall use the senses with which nature has endowed them, and when without excuse one fails to do so, he alone must suffer the consequences, and

he is not excused where he fails to discover the danger if he made no attempt to employ the faculties nature has given him." See case there cited. Here the appellee's only excuse for failing to know the condition of the track was that the carriage was upon the joint and obstructed his view. This, at the instant of the occurrence, may have been true; but, as we have said, no emergency was shown for going upon the loose joint without learning its condition, when, as the evidence showed, it could have been seen by looking at it. It was certainly not due care to have proceeded without looking. There is no view of the case as made by the evidence which supports the verdict and judgment. The judgment is reversed, with instructions to sustain the appellant's motion for a new trial.

Filed December 10, 1895.