REED v. MOORE & McFERRIN.

(Circuit Court of Appeals, Sixth Circuit. May 15, 1907.)

No. 1,617.

1. MASTER AND SERVANT—INJURIES TO SERVANT—ASSUMED RISK.

Plaintiff was employed in a box factory as a belt repairer and assistant to the machinery foreman, to whose orders he was subject. The freight elevator having fallen, plaintiff and the foreman started to repair it, and, without making any examination of the machinery, assumed that the elevator fell because of the breaking of the cord. A new cord was put in and a stop put on for the ground floor, when plaintiff and the foreman went up on the elevator to the second floor to put the stop· on there, but before they could do so the elevator fell, injuring both of them. After the accident a complete examination of the elevator disclosed that the drum shaft was bent, and that the sprocket wheel and gearing were so broken as to be inoperative, either of which ·might have caused the accident. *Held*, that plaintiff assumed the risk in assisting to put the elevator in repair.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 551–558.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

2. SAME—FELLOW SERVANTS.

Plaintiff and the foreman, while engaged in repairing the elevator, were fellow servants, so that plaintiff could not recover for the foreman's negligence in failing to discover the defects in the elevator.

[Ed. Note.—For cases in point, see Cent. Dig. vo1. 34, Master and Servant, §§ 486–490.

Who are fellow servants, see note to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

In Error to the Circuit Court of the United States for the Western District of Tennessee.

Jere Horn, for plaintiff in error.

C. L. Marsilliott and C. A. Lightner, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. The plaintiff in error, J. H. Reed, was injured by the fall of a freight elevator in the box factory, at Memphis, Tenn., of the defendants in error, Moore & McFerrin. There was no substantial dispute as to the facts of the case, and the court be-

low directed a verdict for the defendants. The elevator was an old one, and had several times been repaired. Its gearing, consisting of the sprocket wheel, cogs, etc., connected with the shaft and constituting the operating mechanism of the device, was located on the ground floor and covered by a sheet-iron hood, which not only protected it from the dust, but screened it from observation. The elevator was used for the purpose of carrying material from the ground floor to the second floor only, a distance of about 12 feet.

The duty of keeping this elevator, and, indeed, all the machinery of the factory, in repair, was intrusted to one Antone, the foreman of machinery in the plant. The plaintiff in error was employed as a belt repairer, but he acted as an assistant to Antone in making repairs on the machinery, and in that sense was a subordinate of Antone, and subject to his orders. On September 13, 1905, the elevator suddenly fell from the second to the first floor. It was loaded when it fell, but no persons were on it. Antone was notified of the fall, and called upon Reed to go with him and assist in repairing it. When Antone and Reed reached the elevator, they found that the cord which shifts the elevator up and down, was broken. The elevator was then at the ground floor. They took the old cord off and replaced it by a new one. Then it was necessary to place the stops on the new cord, so as to stop the elevator at the usual places. They put the stop for the ground floor on, and then went up on the elevator to the second floor to put the top stop on; but, before they could do it, the elevator fell, injuring both of them.

It seems that no examination of the operating mechanism of the elevator, either that outside or under the hood, except the cable or cord used to shift the elevator, which they found broken on their arrival, was made by Antone or Reed. When they found the elevator on the ground floor after its fall, and the shifting cable broken, they assumed that the break in this cable was the cause of the accident, and made no further examination. After the accident, a complete examination of the elevator, both that outside and that under the hood, was made, and it appeared that the fall was not due to the break in the shifting cable, but to defects in the operating mechanism; it being due either to the fact that the shaft which held the drum that carried the cable was bent about an inch, or that the sprocket wheel and gearing were so broken as to be inoperative. The sprocket wheel and gearing were covered by a hood; but it seems that the bent shaft was observable outside. It is fair to state that there was some conflict as to whether the shaft was bent before or after the elevator fell. It may have been bent by the fall of the elevator. The defect was not noticed before the elevator fell. The testimony narrows the cause of the accident to either the bent shaft or the broken gearing. One of these causes was observable outside the hood; the other was covered by the hood. One or both of the causes must have existed before the elevator fell the first time; for, after the shifting cable was repaired, the elevator again fell, indicating it was not the break in this cable which caused it to fall.

The legal question involved is whether, under all the circumstances, Reed assumed the risk involved in assisting to put this broken elevator

in repair. The general rule is that the employer is obliged, not only to furnish his employés a reasonably safe place to work in, but reasonably safe appliances to work with. This rule, however, is subject to the exception that if the employé either knows or ought to know that the place or the machinery is in a dangerous condition, and he is engaged in the work of putting in repair, he assumes the risks incident to the work of repair. He cannot act upon the assumption that the machinery is in repair, when he was employed for the very purpose of putting it in repair. There are many cases illustrating different phases of this rule. The exception applies, not only to the work of repair, but also to the risks incident to the work of construction. Thus, in Armour v. Hahn, 111 U. S. 313, 4 Sup. Ct. 433, 28 L. Ed. 440, it was held that:

"The obligation of a master to provide reasonably safe places and structures for his servants to work upon does not oblige him to keep a building, which they are employed in erecting, in a safe condition at every moment of their work, so far as its safety depends on the due performance of that work by them and their fellow servants."

The case of Gulf, etc., Ry. Co. v. Jackson, 65 Fed. 48, 12 C. C. A. 507 (Eighth Circuit), grew out of the repair of a portion of the roadbed of the railroad which had been undermined. The accident was due to the obstructed condition of the ground where the work of repair was being done, and it was held that under the circumstances the injured person assumed the risks attendant upon such obstructed condition. In the case of C. & O. Ry. Co. v. Hennessey, 96 Fed. 713, 38 C. C. A. 307 (this circuit), where a servant was injured while handling a defective car which had been placed upon a special side track used for such cars, it was held that the placing of the car on the special side track was notice to the employé of its defective condition, and he was held to assume the risks of handling it. A somewhat similar case was that of Hauss v. Lake Erie & Western R. R. Co., 105 Fed. 733, 46 C. C. A. 94 (this circuit). Here a brakeman was injured through catching his foot in an unblocked frog on a part of the track under construction. Notice that work was being done on the track was held sufficient warning to the brakeman, and he was held to assume the risks of working about the track in its existing condition.

The case of Kelley v. Chicago, etc., Ry. Co., 35 Minn. 490, 29 N. W. 173, grew out of the handling by a brakeman of a disabled car. He was held to have assumed the risk. The case of Carlson v. Oregon Short Line Ry. Co., 21 Or. 450, 28 Pac. 497, grew out of the repair of the railroad track. The servant engaged in the work of repair was held to have taken upon himself the ordinary risks incident to such work, but not latent risks known to the master, but not disclosed to him or discoverable by the use of proper diligence. Another repair case, but this time of a trolley line, was that of Broderick v. St. Paul City Ry. Co., 74 Minn. 163, 77 N. W. 28. In this case the work of repair was the replacing of a wooden by an iron pole. In the case of Brick v. Rochester, etc., R. R. Co., 98 N. Y. 211, the plaintiff's intestate was killed while riding upon a construction train used in the work of repair. The train ran off the track by reason of

frozen mud alongside the track. It was held that the rule of a safe place did not apply, and the only negligence chargeable was that of a fellow servant. In the case of Dartmouth Spinning Co. v. Achord, 84 Ga. 16, 10 S. E. 449, 6 L. R. A. 190, it was held that a machinist employed to keep machinery in good order takes the risk of discovering its condition at the time he attempts to repair it. Said the court, speaking by Chief Justice Bleckley:

"While it is the duty of a master to furnish his servant safe machinery for use, he is under no duty to furnish his machinist with safe machinery to be repaired, or to keep it safe whilst repairs are in progress. Precisely because it is unsafe for use, repairs are often necessary. The physician might as well insist on having a well patient to be treated and cured, as the machinist to have sound and safe machinery to be repaired."

In Bedford Belt Ry. Co. v. Brown, 142 Ind. 659, 42 N. E. 359, the accident resulted from the slipping of a wedge in the track on a railroad bridge in process of construction. It was held that the rule of safe appliances did not apply. "The rule may be broadly stated that the master is never liable for failing to supply a safe place for the servant to work when the work consists in making safe the place and the condition of which he complains." 142 Ind. 666, 42 N. E. 361.

But it is contended that Reed could not be held to have assumed the risk of the elevator still being in need of repair, after the broken cable had been replaced and Antone had stated that the only thing still to be done was to put on the stops; that Reed had a right to rely on Antone, and did rely on him, and simply followed his orders, and was not bound to examine and ascertain for himself the real condition of the elevator. But, when Reed went to the elevator with Antone to repair it and put it in working order, he knew it was out of repair, and he assumed the risk of helping Antone repair it. He knew, when he went to work with Antone upon the elevator, that it was not a safe elevator, that it needed to be repaired, and that Antone, with his help, must put it in repair. In doing this work of repair, Reed became a fellow servant of Antone, and he assumed the risks resulting from that relation. American Bridge Co. v. Seeds, 144 Fed. 605, 75 C. C. A. 407; Kinnear Mfg. Co. v. Carlisle, 152 Fed. 933. If Antone was negligent, and as a result made a mistake, Reed could not hold the master responsible for that mistake in thinking the defect was repaired when in fact it was not. The master had a right, after calling upon Antone to repair the elevator, to rely upon Antone doing his duty, and not reporting or treating the elevator as safe until it was in fact repaired and in proper working order. That was what Antone was hired to do, was ordered to do, and had assumed the risk of doing, and Reed, who was hired to assist him, assumed the same risks; each taking upon himself the risk of repairing the broken elevator, and also the risk of the negligence of his fellow servant while the work was going on. Neither Antone nor Reed could complain of the elevator being defective, inasmuch as that very thing was the cause of their being there, and they undertook to set it right, being paid for the risk they ran and voluntarily incurring it. Frye, L. J., 18 L. R. Q. B. Div. 702.

The judgment is affirmed.