CHRISTY v. SCHWARTZCHILD & SULZBERGER CO.

(Circuit Court of Appeals, Seventh Circuit.    February 7, 1908.    Rehearing
Denied May 6, 1908.)

No. 1,407.

APPEAL AND ERROR—REVIEW—INSUFFICIENCY OF RECORD.

To authorize the reversal of a judgment error must clearly appear, and.
where, on the trial of an action by a servant against the master to re-
cover for a personal injury, the plaintiff as a witness was permitted to
"indicate" his position at the time of the injury by signs and gestures
which do not appear in the record, but which may have been important
or even vital upon the issue of contributory negligence, the action of the
trial court in directing a verdict for the defendant cannot be reviewed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Er-
ror, §§ 2911–2915.]

In Error to the Circuit Court of the United States for the Northern
District of Illinois.

This is an action to recover damages for an injury to plaintiff in error
caused by the falling of an elevator in the packing house of defendant in er-
ror.  The trial court sustained a motion to direct a verdict for defendant, and
the record is brought here for review by writ of error.

The ground of liability asserted is that defendant did not provide a safe
working place or safe appliances, and that the elevator operator was incompe-
tent, and known to be so by the master, and was not properly instructed in
his duties.  The casualty itself was the catching of the plaintiff in the coils
of the elevator cables, caused by their being suddenly straightened out by the
falling of the car.  Plaintiff was a rigger, working at machinery hoisting, and
was the elevator cable man, the rope man, whose duty was to put cables on
drums, mend cables, test and repair elevator signals, hoist machinery, etc.
He was not a millwright, and had nothing to do with repairing the elevator
machinery.  The elevator is the Barth electric freight lift, supported by two
three-quarter inch steel cables running over a drum, and two other like
counter balance cables.  It had been under repair two weeks.  Two safety
devices, known as the "guide grips" or "safety clutch" and the "slack-cable
device," serve to stop the car or cut off the power when required.  The safety
clutch or guide grips consist of castings, eccentric in form, called "dogs," a
spring and levers under the car, etc.  When the device is in working order
and the descent of the car is arrested by the grips, they will not let go until
properly released, but at the time of the accident they held for a time and
then suddenly and unexpectedly let go.  The car dropped and the injury fol-
lowed.  The slack-cable device served to automatically disconnect the electric
motor and the spool or drum on which the elevator cables were wound, and
when in working order was held in proper position by the vertical cables
hanging from the drum and supporting the weight of the elevator.  If for
any cause these cables became slack, as by stopping the elevator by the guide
grips without stopping the cable drum, the slack-cable mechanism would fall
to the floor, and by its weight turn an arm or lever so as to disconnect motor
and drum, and thus prevent further unwinding.  The elevator operator knew
how to start and stop the car.  His prior work was yarding cattle.  Four days
before the accident he was put on the elevator, spending a day, as one wit-
ness says, and three hours, as he says, learning to work it.  At the time of the
accident, the millwrights were trying to repair the elevator.  Manhoff and
Schmidt were the millwrights.  They had been experimenting with the safety
clutch for some time, but could not get it to work properly, and Manhoff went
to the elevator shanty, above the upper floor, to examine the machinery there.

When Manhoff reached the elevator shanty, he found the slack-cable device
out of order.  He took it to the shop, had some bent parts straightened, brought
it back, and replaced it.  He did not properly tighten the set screws holding the
arm which turned off the power, as every time the car stopped while descend-

ing, from the imperfect action of the safety clutch, it was necessary to take up the slack cable by having the operator turn the handle in the car. The slack-cable device does not appear to have worked at all after Manhoff replaced it, and for some reason which does not appear he did not adjust it at the time it was replaced by him. Such was the situation immediately before the accident. The elevator was not being used for work, but only for experimenting with the repairs. The safety dogs under the car were stopping it every few feet on its down trip, and then letting go. The slack-cable device was not working. and the loose cables were being taken up under Manhoff's orders by turning the wheel in the car for an upward movement.

Manhoff returned to the motor shanty, continuing his efforts to get the elevator machinery in proper condition. Seeing plaintiff coming from another part of the building, he called him to see if the cables were of the same length. Plaintiff examined them and pronounced them all right. He knew that repairs were being made, and that he was called because there was something wrong with the machinery. Finding there was nothing wrong with the cables, Manhoff ordered the elevator down, and plaintiff instead of going on about his own work, staid by. The car descended a few feet, and the same thing happened as so often before. The safety dogs gripped the guide, stopped the car, and the slack-cable device fell to the floor, but failed to disconnect the motor and drum. The drum kept turning and the cables unwound. The operator did not turn off the power with the car wheel, but allowed the cables to unwind until Manhoff shouted down to him to shut off the power, which he did. By this time the cables had unwound about 15 feet, and lay coiled and twisted on the floor in front of the drum at the side of the motor like a huge snake. As soon as the drum stopped, Manhoff threw out the switch and cut off the electric current from the motor. He and the plaintiff then started to straighten out the cables so as to rewind them on the drum. Manhoff stood at one end of the drum and plaintiff near the other end, in front of and about a foot from it, and at the side of the motor. Manhoff asked what was the matter with the clutch or brake, which is a device holding the drum fast, and preventing it from being turned back. As they were preparing to rewind the cable, it was necessary to release this device. Plaintiff stooped over towards the drum and just as he did so the safety clutch under the car let go, the elevator fell, the cables straightened out with great force, catching plaintiff by the legs, breaking both of them, and causing a permanent injury through consequent atrophy of the muscles of the right leg.

It does not appear just how the cables caught the plaintiff, or whether he was standing within their coils. He says they unwound around him, in around him and alongside of him, and that he did not change his position at any time before the accident. "Before the car fell there was no cable around me or in front of me." "It was right alongside of me, the right side as I was facing the drum." He further testified that he assisted Manhoff to straighten out the cables, so far as to get his hands on them and pull them. After he was caught in the cables he says; "My feet were in this shape [indicating] and my head was like that [indicating]. I should judge my feet were two feet or so above the floor. I was laying on my side like that [indicating]." By reason of this inexcusable fault of permitting a witness to "indicate" something which cannot possibly be preserved in the record, it is impossible to get any clear notion of just how the accident really happened. Manhoff says that plaintiff had gotten up on the base of the drum, about six inches above the floor, looking at the brakes, when the car fell, and that there was no cable where he was standing, right near him, and that he himself was standing within two inches of the cable as it lay on the floor. Plaintiff further testified that the cable was coiled up in the shape of the letter U.

The trial court directed a verdict for the defendant on the ground that plaintiff was a volunteer, that the only negligence for which the master could be charged was that of a fellow servant, and that plaintiff was guilty of contributory negligence.

Simon Kruse, for plaintiff in error.
John D. Black, for defendant in error.

Before BAKER and SEAMAN, Circuit Judges, and SANBORN, District Judge.

SANBORN, District Judge (after stating the facts as above). The work being done at the time of the accident was repairing. The elevator was not in use, except to experiment with the repairs. Plaintiff was called by the millwright to learn if the cables were properly placed on the drum. Having completed this, his duty ceased, and his staying to assist further was repair work, and made him a fellow servant with the millwright, assuming the risks of that service. Reed v. Moore & McFerrin, 153 Fed. 358, 82 C. C. A. 434. If the elevator operator had been incompetent for want of instructions or other cause known to the employer, and his negligence had caused the injury, plaintiff would not have assumed that risk; but he was instructed, and, so far as appears, competent to run an elevator when in repair, and his failure to prevent the unwinding of the cables was the remote cause, the proximate cause being the defective clutch in process of repair.

The condition in which the record comes to us makes it also necessary to hold the plaintiff chargeable with contributory negligence. Plaintiff was permitted to "indicate" and "illustrate" his testimony by signs and gestures which are not explained, but which were entirely intelligible to the trial court. It thus happens that important, perhaps vital, evidence is not before us. If this evidence were here, it might be clear from the way plaintiff was caught in the cables that he carelessly placed himself in a dangerous position. To authorize reversal error must clearly appear. The trial court, with all the evidence before it, directed a verdict for defendant. Some of the evidence being omitted we cannot say this was error. Consolidated Stone Co. v. Summit, 152 Ind. 297, 53 N. E. 235. Although the bill of exceptions is certified to contain all the evidence offered, heard or taken at the trial, yet the omission of matters apparent on its face, which might have been controlling of the decision below, must lead to affirmance of the judgment.

The judgment is affirmed.