## BALTIMORE & O. R. CO. v. BRANDENBERGER.

### No. 6561.

Circuit Court of Appeals, Sixth Circuit.

Jan. 11, 1935.

---

[3] 28 USCA § 76.

[4] 39 Stat. 532.

594

J. S. Rhinefort, of Toledo, Ohio (Tyler, Wilson & Rhinefort, of Toledo, Ohio, on the brief), for appellant.

Francis J. Gallagher and Charles H. Brady, both of Toledo, Ohio (Brady & Gallagher, of Toledo, Ohio, on the brief), for appellee.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

This appeal arises out of a judgment for damages for personal injuries sustained by the appellee while in the employ of appellant as a work writer and supervisor of car repairs. The main questions presented are: First, that the court should have directed a verdict for appellant; and, second, that the court erred in its charge upon assumption of risk.

As to the first contention, the case was submitted to the jury upon the question whether appellant failed to give appellee proper notice of the particular defect in the roof handhold upon the freight car, which caused the injuries. As was said in Yazoo & M. V. Rd. Co. v. Long, 201 F. 881 (C. C. A. 6), the railroad primarily owed its employees the duty of using due care by way of reasonable inspection to discover whether the handholds were in safe condition, and it is elemental that its employees had the right to presume that the railroad would make a reasonably sufficient inspection of the car. Appellee was not an inspector. In order to explain his exact function, it is necessary to describe the method employed by appellant in inspecting and repairing cars. It was, in substance, as follows:

In the outer yards a car was given a complete, or "A," inspection, by three inspectors. Two of the inspectors remained on the ground inspecting each side, the ends, etc., of the car. A third inspector upon the roof noted down defects and called them down to the ground inspectors. Each ground inspector checked upon a "bad order" card all defects noted, including those on the roof, and then tacked his bad order card on his side of the car. The car was then moved to the repair tracks. The work writer or supervisor of repairs looked at the bad order card, and filled out a form for defects noted thereon, to guide the repairmen. Before the car could be moved from the repair tracks, the work writer was required to make out a certificate that he had given the car an "A" inspection, and that it was in condition and safe to move to destination.

In this case the roof inspector says that he reported to the ground inspectors that the roof handhold was in bad condition. It was the duty of each ground inspector to mark an "X" upon the bad order card before the name of each part noted as defective. The word "handhold" was printed in red, indicating that a defect in the handhold is a penalty defect. No "X" was placed in front of the word "handhold" on the bad order card on either side of the car. Each of the two bad order cards had an "X" before the words "running board," and one bad order card had the word "handhold"

written in pencil on its face. Appellee and another witness testified that no notation indicating that any handhold was defective appeared on the bad order card attached to the east side of the car.

Appellee ascended the east side of the car to examine the running board on the roof. He took hold of the roof handhold, which is the grab handle located on the roof above the side ladder, some eight to fourteen inches from the edge of the roof. It broke loose, and appellee was injured.

On the point of the refusal to direct a verdict, appellant claims (1) that it was the duty of appellee to make an "A" inspection of the car before he wrote down the information to guide the repairmen in making the repairs, and that such "A" inspection would have revealed the defective handhold; (2) that the record establishes without controversy that appellee could have seen the defective character of the roof handhold from the side of the car, and (3) that appellee assumed the risk.

Two of appellant's witnesses testified, in substance, that appellee was required to make an "A" inspection of the car before repairs were made. However, three employees of appellant stated that it was the duty of the work writer to make an "A" inspection, but did not testify that this "A" inspection should be made before the car was repaired. The printed rules of appellant did not require an "A" inspection by the work writer prior to the time of repairs. Appellee denies that it was his duty to make an "A" inspection at this time. He states that later, after the repairs indicated had been made, he was required to make an "A" inspection of the car and to execute the certificate as to its safe condition. He is corroborated in this by one of his witnesses, and also by the testimony as to the nature of his work. He was not an inspector. It was his duty to guide the repair men in the nature of repairs to be made and to specify materials necessary for that purpose.

■ With reference to the question whether appellee could see the defective handhold from the side ladder of the car, he admits that it was his duty to keep his eyes open and to note down obvious defects. Jones, witness for appellant, testified that the condition of the roof handhold could be seen from the ladder. Appellee and one of his witnesses testified that the roof handhold could not be seen from the ladder. This was corroborated by Bauer, witness for appellant. The jury found, in answer to a special interrogatory, that the defectiveness of the handhold was not so obvious that an ordinarily careful person in appellee's situation would have observed the defectiveness and appreciated the danger of using the handhold in such defective condition. There was substantial evidence supporting this finding.

■ As to the question of assumption of risk, which appellant claims is clearly shown on this record, the nature of appellee's work is again important. A workman assumes the risk of a defective appliance when he is employed either to repair it or to ascertain whether it is in disrepair. Noftz v. Baltimore & Ohio Rd. Co., 13 F.(2d) 389 (C. C. A. 6); Reed v. Moore & McFerrin, 153 F. 358, 25 L. R. A. (N. S.) 331 (C. C. A. 6). Appellee was not in either of these categories. Unless the evidence clearly shows that the employee was aware of the risk, or it was so plainly observable that he must be presumed to know it, the question of his assuming it is properly left to the jury. Choctaw, Oklahoma & Gulf Rd. Co. v. McDade, 191 U. S. 64, 24 S. Ct. 24, 48 L. Ed. 96; Texas & Pacific Ry. Co. v. Swearingen, 196 U. S. 51, 25 S. Ct. 164, 49 L. Ed. 382; Chesapeake & Ohio Ry. Co. v. De Atley, 241 U. S. 310, 36 S. Ct. 564, 60 L. Ed. 1016; Chesapeake & Ohio Ry. Co. v. Proffitt, 241 U. S. 462, 36 S. Ct. 620, 60 L. Ed. 1102; Yazoo & M. V. Rd. Co. v. Long, 201 F. 881 (C. C. A. 6). On the evidence here presented, it does not appear as a matter of law that the appellee assumed the risk. The District Court did not err in refusing to direct a verdict.

■ Appellant urges that the court failed properly to charge upon the question of assumption of risk. The court left the question to the jury, with instructions that the plaintiff could not recover if by the observance of ordinary care upon his part he ought to have known of the defective condition of the handhold. This charge was more favorable to the railroad than the law required, as it exonerated appellant from fault if, in the exercise of ordinary care, the appellee might have discovered the danger, when the test is whether the defect was known to or plainly observable by the appellee. Choctaw, Oklahoma & Gulf Rd. Co. v. McDade, supra. Additional requests to charge upon assumption of risk were properly refused because they lacked pertinency, or, when pertinent, were covered by the charge given.

The judgment of the District Court is affirmed.