Filed Nov. 3, 1892.

———————

No. 15,674.

132 533
142 482
143 131
143 697
132 533
152 670

# THE OHIO AND MISSISSIPPI RAILWAY COMPANY *v.* STANSBERRY.

INTERROGATORIES TO JURY.—*Must not Involve a Question of Law.*—In connection with other interrogatories which were submitted to the jury, the court refused to submit the following: "11. Q. If plaintiff did not look to see where she was stepping when she alighted, what reason or excuse was there for her not doing so? 12. Q. If you answer question eleven affirmatively, if there was any other reason or excuse, state fully what it was."

*Held*, that an answer to these interrogatories would necessarily have involved a question of law, which can not be submitted to a jury by interrogatories.

RAILROAD.—*Defective Platform.— Use of by Passenger.—Degree of Care Necessary.*—In order to make a passenger using a platform guilty of contributory negligence, the defect must be such as would naturally suggest to one of common understanding that it was dangerous, and such as to place one in peril to pass over it. A passenger is not bound to that degree of inspection and care as a servant in the master's service.

INSTRUCTION TO JURY.— *When not Error to Refuse to Give.*—It is not error to refuse to give an instruction when there are other instructions given quite as favorable as the one refused.

SAME.—*Comment on While Reading.-- When Error.*—When a judge in reading instructions to a jury stopped and said: "That's not correct; I'll read that again," and thereupon re-read the instruction, the statement of the judge, not bearing upon a question of law or fact involved in the case, is not to be taken as a part of the instruction, and was not erroneous.

From the Lawrence Circuit Court.

*M. F. Dunn, G. G. Dunn, W. M. Ramsey, L. Maxwell, R. Ramsey*, and *E. Barton*, for appellant.

*R. N. Palmer* and *J. Giles*, for appellee.

MILLER, J.—This action was brought to recover damages for a personal injury.

The complaint is in two paragraphs. The first charges that the appellee, who was the plaintiff in the action, was a passenger upon the appellant's road from Huron to Mitchell, and that in alighting at that point from the train she stepped into a hole in defendant's platform, which was out of repair and unsafe, and injured her foot.

The second paragraph alleges that in consequence of the negligence and carelessness of the conductor and brakeman in not assisting her off the train she stepped, or fell into a hole in the platform and was injured.

The answer was a general denial of all the material allegations of the complaint.

The questions of law discussed in the briefs of counsel relate to the refusal of the court to submit to the jury two interrogatories propounded by the defendant; to the refusal to give instructions asked by defendant; and to the action of the court in making an oral modification of one of the charges to the jury, after having been requested to put its charges in writing.

These questions we will consider in their order.

Interrogatories were submitted to the jury and answered as follows:

"1. Q. Was it daytime or night-time when plaintiff stepped off defendant's train at Mitchell? A. Daytime.

"2. Q. Did plaintiff look to see the condition of the platform before she stepped upon it? A. She did not.

"3. Q. Was the condition of the platform at Mitchell, upon which plaintiff stepped, open to view? A. Yes.

"4. Q. What was there to have prevented plaintiff from seeing the condition of the platform before she stepped upon it? A. Nothing."

The interrogatories asked and refused were as follows:

"11. Q. If plaintiff did not look to see where she was

stepping when she alighted, what reason or excuse was there for her not doing so?

"12. Q. If you answer question eleven affirmatively, if there was any other reason or excuse, state fully what it was."

We are of the opinion that the court did not err in refusing to submit these interrogatories to the jury. The court did submit interrogatories calling for particular questions of fact, that seem to have been sufficient to call out generally the facts surrounding the happening of the accident, and we may assume that other interrogatories calling for other particular facts would likewise have been submitted if prepared and tendered in season. The interrogatories refused do not comply with the requirement of the statute providing that the jury, in case they render a general verdict, may be required " to find specially upon particular questions of fact, to be stated in writing."

It has been frequently held that this does not contemplate a finding upon the whole matter in issue (*Uhl* v. *Harvey*, 78 Ind. 26), nor an issue in the case (*Todd* v. *Fenton*, 66 Ind. 25), nor one calling for a conclusion of law (*Louisville, etc., R. W. Co.* v. *Worley*, 107 Ind. 320; *Chicago, etc., R. R. Co.* v. *Ostrander*, 116 Ind. 259), nor for mingled questions of law and fact. *Town of Albion* v. *Hetrick*, 90 Ind. 545; *Louisville, etc., R. W. Co.* v. *Pedigo*, 108 Ind. 481.

In order to answer the interrogatories, it would have been necessary for the jury to have determined what, under all the circumstances, would have been a reason or excuse for not looking. This determination of what would have been a reason or excuse for not looking, necessarily involves a question of law which can not be submitted to a jury by an interrogatory.

The failure of the court to give the *fifth* and *eleventh* instruction asked by the defendant was made a ground

for which a new trial was asked. These instructions are as follows:

" 5  The rule of law is that any one who seeks or accepts transportation by railway or other means, necessarily more or less accompanied with danger, must exercise ordinary care for their own safety while being so transported, or in taking passage on or leaving trains.

" They must exercise the faculties which they possess. If there is an apparent defect about the appliances with which they come in contact, or which are in use, they must look; and unless some reasonable excuse is given, they are guilty of negligence if they do not look."

" 11.  If there was a hole in the platform, at the point where the plaintiff alighted, and if in the exercise of ordinary care in alighting, she could and should have seen it, and she could by seeing it have avoided any injury, and she failed to see it, you must find for the defendant."

By the *fifth* instruction a traveller who intrusts himself to the care of a carrier for transportation is, as to the duty of inspection and care, placed in substantially the same condition as that occupied by a servant engaged in the master's service. The positions occupied by these two classes are essentially different, and in this difference lies the vice of the instruction.

That it is the duty of a railway carrier of passengers to provide for the safe entry and exit of its patrons from its cars, including the proper care of its depots, platforms and approaches has been recently held in the well considered cases of *Louisville, etc., R. W. Co.* v. *Lucas*, 119 Ind. 583; *Lucas* v. *Pennsylvania Co.*, 120 Ind. 205; *Pennsylvania Co.* v. *Marion*, 123 Ind. 415; *Liscomb* v. *New Jersey, etc., Co.*, 6 Lans. 75; *Toledo, etc., R. W. Co.* v. *Grush*, 67 Ill. 262; Hutchinson Carriers (2 ed.), sections 516, 517.

In order to make a passenger using a platform guilty of contributory negligence, the defect must be such as would naturally suggest to one of common understanding

that it was dangerous, and such as to place one in peril to pass over it to and from a train.

In *Brassell* v. *New York, etc., R. R. Co.,* 84 N. Y. 241, it is said:

" A passenger, when taking or leaving a railroad car at a station, has the right to assume that the company will not expose him to unnecessary danger; and while he must himself exercise reasonable care, his watchfulness is naturally diminished by his reliance upon the discharge by the company of its duty to passengers to provide them a safe passage to and from the train."

In the case from which we have quoted, the plaintiff, who was a passenger, got off a car and started to leave by passing across another track of defendant, when she was run down and killed by an approaching train. The evidence tended to show that she did not look to the east, from which direction the train was approaching, and that if she had looked she could have seen it in time to have avoided injury. The court refused to charge that the failure of the deceased to look to the east before going upon the track was in law negligence upon her part. On appeal, this ruling was sustained, the court saying:

" The fact that the deceased did not look for the approaching train was a material and important fact to be considered by the jury upon the point of contributory negligence; but her omission to do so was not in law decisive against a recovery."

To the same effect see *Terry* v. *Jewett,* 78 N. Y. 338; *Murphy* v. *New York, etc., R. R. Co.,* 88 N. Y. 445; *Lent* v. *New York, etc., R. R. Co.,* 120 N. Y. 467.

We are satisfied that a passenger upon a railway train has a right to confidently rely upon the care and watchfulness of the carrier to make all things safe for his transportation, with its necessary incidents. While passively submitting himself to its care during the journey, or while entering upon or leaving its cars in the usual place and

ordinary time and manner, he is not to be deemed guilty of negligence, unless knowledge of a defect or peril is thrust upon him, and he then fails to use ordinary care to avoid injury.

The *eleventh* instruction asked by the defendant is less objectionable than the *fifth,* but casts upon a passenger the .use of a degree of care in looking for defects which they, under the circumstances, are not required to exercise. It is also objectionable for failing to limit the duty. of avoiding injury to such as would result from the use of ordinary care and skill.

The defect in the platform may have been visible to a passenger alighting from a train, but may not have appeared to be dangerous or likely to cause injury.

Complaint is made of the refusal of the court to give the following instruction :

"13. You can not consider the allegations of the complaint as to the duty of defendant's employes to assist plaintiff to alight; for there was in this case no legal duty resting upon them."

The latter part of this instruction is quite indefinite, but assuming that the instruction contained a correct statement of the law under the evidence, it was not error to refuse it.

We find in the record instructions upon the subject that were given to the jury quite as favorable to the appellant as the one refused.

The defendant requested the court to reduce its instructions to writing, which was done; but during the reading of the same to the jury, and after reading one of its instructions, the court stopped and said : "That is not correct; I'll read that again," and thereupon re-read said instruction.

Every statement or remark made by a court during the time consumed in delivering its charge to the jury is not necessarily a part of its instruction. A statement not

bearing upon questions. of law or fact involved in the issue is not to be taken as a part of the instruction. *Mc-Callister* v. *Mount*, 73 Ind. 559; *Lawler* v. *McPheeters*, 73 Ind. 577; *Hasbrouck* v. *City of Milwaukee*, 21 Wis. 219; *Lehman* v. *Hawks*, 121 Ind. 541.

We do not understand the remark made by the court to refer to anything contained in the instruction being read, but to some mistake in reading it. The statement " I'll read that again," shows that by a second reading the court proposed to correct the mistake referred to. This was consistent with the idea of a mistake in the first reading, but would have been a repetition, not a correction, of the instruction deemed erroneous.

We find no error in the record.

Judgment affirmed.

