RYAN et al. v. SMITH et al.

(Circuit Court of Appeals, Ninth Circuit.  February 7, 1898.)

No. 393.

MASTER AND SERVANT—NEGLIGENCE OF FELLOW SERVANT.
    Deceased was employed as a dumper engaged in unloading coal hoisted from a vessel in large buckets, to which were attached pieces of rope called "tails," which, in the operation of dumping, the dumpers took hold of, to steady and pull the buckets towards them. These "tails" were made, spliced, and put on the buckets by the dumpers, the rope being furnished by the employer. The giving way of one of these tails, from not being properly spliced, resulted in the fall of deceased through a hatchway, and his consequent death. *Held*, that the negligence was that of fellow servants, for which the employer was not responsible.

In Error to the Circuit Court of the United States for the Northern District of California.

Reddy, Campbell & Metson, for plaintiffs in error.

Sydney V. Smith, for defendants in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. This action was brought by the plaintiffs in error (plaintiffs also in the court below) to recover damages for the death of Charles Ryan, who was at the time of his death in the employ of the defendant Smith, as receiver of the Oregon Improvement Company, and engaged as dumper in the unloading of coal from the bark "Empire." The coal was hoisted in large tubs or buckets, to the sides of which were fastened pieces of rope, called "tails," which, in the operation of unloading, the dumpers took hold of, for the purpose of pulling the buckets towards them, and steadying the buckets in the operation of dumping the coal. The evidence in the case was to the effect that Ryan came to his death by the giving way of one of the tails hung to one of the tubs, which tail was not properly spliced, resulting in the fall of Ryan through one of the hatches of the vessel into its hold, and his consequent death. The evidence tended to show that the defect in the tail in question was that it was plaited, instead of spliced, and that the defect was obvious upon inspection. The evidence further tended to show that it was customary for the dumpers, including Ryan, to make and splice the tails, and put them on the buckets for themselves; the rope for such tails being provided by the employer, and hung in the engine room of the vessel. It is not claimed upon the part of the plaintiffs that the rope from which the tails were made was defective. There was no evidence tending to show that any tails were made or put on the buckets by any one but the dumpers. Manifestly, in doing that work, as well as in the act of dumping the coal, the dumpers were fellow servants. Upon the case as presented, the defect in the splicing of the tail, which caused the death of Ryan, could only be attributed to the negligence of one or more of the dumpers; and, that being so, whether it was the negligence of Ryan himself or of one or more of his fellow servants, his representatives, under the well-settled rule, are precluded from recovering damages from the employer. To such a case as the present, the general rule that it is the master's duty to keep the machinery and apparatus with which his work is done in good order and repair, and that this duty cannot be so delegated as to exempt the master from liability, does not apply. Cregan v. Marston, 126 N. Y. 568, 27 N. E. 952; McGee v. Cordage Co., 139 Mass. 445, 1 N. E. 745; Noyes v. Wood, 102 Cal. 389, 36 Pac. 766; Railroad Co. v. Jewel, 46 Ill. 100. The judgment is affirmed.