## EDWARD H. MURPHY vs. CITY COAL COMPANY.

Bristol.    October 25, 1898. — January 5, 1899.

Present: FIELD, C. J., HOLMES, KNOWLTON, BARKER, & HAMMOND, JJ.

*Personal Injuries — Master and Servant — Negligence — Assumption of Risk — Due Care.*

The risk which a workman assumes by virtue of his contract of employment, under the employers' liability act, St. 1887, c. 270, does not include the risk arising from the negligent act of a superintendent.

In an action under the employers' liability act, St. 1887, c. 270, for personal injuries occasioned to the plaintiff by being jammed between a car used for transporting coal and an apparatus called a pick-up which propelled the car, there being a possible phase of the case where the risk was not assumed by the plaintiff, the defendant is not entitled to a ruling that, "if the jury find that the plaintiff engaged to run the car in question and undertook that employment, and if the jury find the liability of the pick-up to injure a person in the situation in which the plaintiff was hurt to be proven, then that danger was an obvious risk assumed by the plaintiff for which he cannot recover"; and if it is stated in the bill of exceptions that "full general instructions appropriate to the case were given by the court to the jury, which were not excepted to otherwise than as herein appears," it will be presumed that the jury were rightly instructed upon the subject.

If a workman, without waiting to ascertain why an apparatus used in the business in which he is employed fails to work, of his own motion and without any direct command goes from a place of safety to a position of danger in which he is hurt, he cannot recover for his injury, if he appreciated the danger, or in the exercise of reasonable care ought to have been aware of it.

TORT, under the employers' liability act, St. 1887, c. 270, for personal injuries received by the plaintiff while engaged in discharging coal. Trial in the Superior Court, before *Lilley*, J., who allowed a bill of exceptions, in substance as follows.

There was evidence tending to show that the plaintiff was injured while in the employ of the defendant, by being caught and jammed between a car used for the transportation of coal from a hopper to bins in which it was to be deposited for delivery when sold, and a certain apparatus called a pick-up; that this car was operated on a track elevated upon a trestle-work above the succession of bins in which the coal was dumped; that the car was propelled by this pick-up when power was communicated to it by the action of a certain apparatus called a triangle, and located beneath the hopper; that this triangle was connected with the pick-up by means of a rope or cable running

over pulleys; that when loaded at the hopper the car moved upon this slightly inclined track by force of gravity until it came in contact with the pick-up, which it pushed to the spot where it was intended to dump the load; that at this spot was stationed on the side of the rail a certain other apparatus so constructed as automatically to open the sides of the car and empty it of its load; that thereupon the car, being thus lightened, was pushed by the pick-up, by reason of the weight of the triangle communicating power to it, for a distance of about fourteen feet, and received an impulse that gave it requisite momentum to return to the hopper for reloading; that on the occasion of the accident to the plaintiff, the triangle, a loose plank having been temporarily caught beneath it, failed to work, so that the pick-up did not start the car, and it remained motionless upon the track at the spot where it was unloaded; that thereupon the plaintiff, who was standing at the time on the south side of the track watching the operation of the mechanism, and in a place of safety, inquired of one Rowe, who was standing at the hopper, what the reason was that it did not work, and was told that the trouble must be at the plaintiff's end; that, without waiting to ascertain the difficulty, the plaintiff stepped upon the track in the rear of the pick-up and at once commenced to push the car away from the pick-up; that when the car had moved sufficiently, he stepped over the pick-up between that and the car and continued to push it along by hand; that at this moment, while the plaintiff was between the pick-up and the car, pushing the latter forward, and some little distance from the pick-up, the defendant's foreman observed the plank under the triangle and directed a person to remove the same so that the triangle would work; and that, upon his so doing, the triangle instantly fell, communicated power to the pick-up through the rope or cable, and caused the pick-up to advance upon the plaintiff, jamming him between it and the car, and causing the injuries complained of.

On cross-examination, the plaintiff testified, among other things, as follows. He was employed first in the forenoon of the day before the accident occurred, and went to work about noon of the following day. This accident was at the second time the car was loaded, and the first time it went down after

he was assigned his place to work. At the time he was employed, one Witherell, the defendant's superintendent, asked him if he would run the car for him. The plaintiff replied, " No, I did not understand running it. I would like to go trimming." Witherell replied, " Yes, you do, I would like to have you go and run it; I have trimmers enough "; and further told the plaintiff to go up and run the car, and that he would send one Rowe to help him. At the time of the conversation, the plaintiff did not expect the car to be moved back by machinery, and did not know what trouble there might be in pushing it back before the job was finished. The first time the car was unloaded after the plaintiff went to work, it was not in charge of the plaintiff, who was at the hopper; and the apparatus failing to work, the plaintiff saw the car pushed back by hand. The plaintiff for about two years had been employed in another coal yard, and had seen dump cars operated and unloaded automatically. He was always employed on the brow, and never at the hopper, and never had anything to do with the apparatus. He knew that there was a weight in a box connected in some way with the pick-up, and that the two together returned the dump car to the hopper. How connected and in what way it operated he did not know.

There was other testimony tending to prove that the plaintiff by previous occupation had had experience in connection with a similar device for propelling cars in a similar service.

There was evidence tending to show that Witherell was the superintendent of the defendant. There was other evidence tending to show due care on the part of the plaintiff, and negligence on the part of Witherell, at the time the plaintiff was hurt.

The defendant asked the judge to instruct the jury as follows: " If the jury find that the plaintiff engaged to run the car in question, and undertook that employment, and if the jury find the liability of the pick-up to injure a person in the situation in which the plaintiff was hurt to be proven, then that danger was an obvious risk assumed by the plaintiff, for which he cannot recover." The judge declined to give this instruction.

The defendant also requested the judge to instruct the jury that " if they found that the plaintiff, when he asked the cause

of the trouble, was standing in a place of safety, and without
waiting to ascertain why the pick-up did not work, voluntarily
placed himself in a position of danger and was injured in conse-
quence, he cannot recover."

The judge gave this instruction, but modified it by adding at
the conclusion the words, " if he appreciated the danger, or in
the exercise of reasonable diligence ought to have been aware
of it."

Full general instructions appropriate to the case were given to
the jury, which were not excepted to otherwise than as herein
appears.

The jury returned a verdict for the plaintiff; and the defend-
ant alleged exceptions.

*H. M. Knowlton & A. E. Perry*, ( *C. J. Noyes* with them,) for ·
the defendant, submitted the case on a brief.

*L. LeB. Holmes & A. B. Collins*, for the plaintiff.

HAMMOND, J.  1. The first request was rightly refused.
The evidence, so far as disclosed in the report, tended to show
that the defendant's superintendent ordered the removal of the
board obstructing the triangle before the car had passed over the
fourteen feet of track in which the pick-up operated, and while
the plaintiff was in this dangerous space of the track ; and that
" upon his so doing, the triangle instantly fell, communicated
power to the pick-up through this rope or cable, and caused the
pick-up to advance upon the plaintiff, jamming him between it
and the car, thus producing the injuries for which he complains " ;
and the jury would have been warranted in finding that this order
was negligent.   Even if the liability of the pick-up to injure a
person in the situation in which the plaintiff was when hurt
was an obvious risk of the business assumed by the plaintiff, that
rule was not applicable to the case if the jury found that the
accident was caused by the negligent act of the superintendent.
The risk which the workman assumes by virtue of his contract
of employment does not include the risk arising from the negli-
gent act of a superintendent.   If it did, the purpose of the stat-
ute under which the case was submitted to the jury would be
defeated.   *Malcolm* v. *Fuller*, 152 Mass. 160, 167.   *Davis* v. *New
York, New Haven, & Hartford Railroad*, 159 Mass. 532, 536.
*McPhee* v. *Scully*, 163 Mass. 216.   *Smith* v. *Baker*, [1891] A.
C. 325.

There being a possible phase of the case where the risk was not assumed by the plaintiff, the judge could not properly have given the ruling in the broad and unqualified form in which it was requested, and as it is stated in the bill of exceptions that " Full general instructions appropriate to the case were given by the court to the jury, which were not excepted to otherwise than as herein appears," we must presume that the jury were rightly instructed upon the subject.

2. In dealing with the second request, some embarrassment arises from the difficulty in ascertaining what it means. The counsel for the defendant in his brief seems to think that it should be interpreted as meaning in substance that, if the plaintiff of his own motion went outside the scope of his employment when he placed himself between the pick-up and the car, or, in other words, if the plaintiff in moving the car was a mere volunteer, he cannot recover.

But we do not think that is the fair and natural import of the language. The judge was justified in interpreting it, as he evidently did, as meaning that if, without waiting to ascertain why the pick-up did not work, the plaintiff of his own motion and without any direct command went from a place of safety to a position of danger in which he was hurt, he cannot recover; and hence he gave the instruction with the modification " if he [the plaintiff] appreciated the danger, or in the exercise of reasonable diligence ought to have been aware of it."

And this, we think, was correct. While the plaintiff had worked elsewhere in a similar employment for some years, he had begun to work on this job only a few hours before he was hurt. He testified that when, upon his application for employment, Witherell asked him if he " would run the car for him," he replied in the negative, saying he " did not understand running it." The car which passed from the bins to the hopper end of the trestle just before this car was pushed to the hopper in the same way in which this was, and the plaintiff saw it done. It does not appear that anything was said by anybody against that act. This request bears only upon the question of the plaintiff's due care. The jury may have found, upon all the evidence on this branch of the case, only a part of which is before us, that the plaintiff was warranted in thinking that

whenever the pick-up did not move he was expected to push the
car back, and that, so thinking, he went upon the trestle for that
purpose.   If that was his idea, then, so far as the question of his
due care was concerned, he was not necessarily precluded from
recovering, unless he appreciated the danger, or in the exercise
of reasonable diligence ought to have been aware of it, and this
would be so although he was not directly commanded to do it,
but did it of his own motion, or " voluntarily."

*Exceptions overruled.*