## The Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company v. Foust, Administratrix.

[No. 7,882.   Filed October 17, 1912.   Rehearing denied March 14, 1913.]

1. NEGLIGENCE. — *Elements of Action.* — *Complaint.* — Where the breach by defendant of a legal duty owing by him to the plaintiff, and an injury to plaintiff resulting from such breach, is shown, actionable negligence exists, but the absence of either of the three elements will render the complaint bad.  p. 94.

2. PLEADING.—*Complaint.*— *Sufficiency.*— *Recitals.*—The sufficiency of a complaint stating facts constituting all the elements of actionable negligence is not affected by the reason that it also contains the statement of facts by way of recital.  p. 95.

3. RAILROADS.—*Injuries to Persons on Tracks.*—*Licensees.*—The rule that a mere licensee enjoys the license subject to its attendant risks and concomitant perils, and that the only duty owing to a licensee by one granting the license is to protect him from wilful injury, is not applicable where a railroad company had contracted for the installation of a system of interlocking devices and had licensed decedent, as an employe of the contractor, to go upon its tracks in carrying on the work of installation, but such rule is to be confined to cases where the licensee is granted permission to go upon the premises of the owner for purposes of his own, and in which the owner has no interest.  p. 95.

4. NEGLIGENCE.—*Legal Status of Injured Person.*—*Complaint.*—The legal status of a person at the time of his injury or death through the negligence of another is not to be determined by its characterization in the complaint, but from all the facts averred.  p. 96.

5. RAILROADS.—*Injury to Persons on Tracks.*—*Complaint.*—*Sufficiency.*—Where decedent, who was killed by one of defendant's trains while he was on the track in the employ of a contractor engaged in installing a signal system for defendant, the allegation of the complaint that decedent's duty required him to be upon the tracks at the place where the injury occurred and that he was there by invitation of defendant, with the full knowledge

of defendant, its servants and agents, was sufficient to raise a legal duty against defendant to the same extent as if decedent had been one of defendant's employes.   p. 96.

6.   RAILROADS.—*Injury to Persons on Tracks.—Employe of Construction Company.—Evidence.—Sufficiency.*—In an action for negligent death on the defendant's railroad track of one claimed to have been employed by a contractor at the time engaged in installing a signal system for defendant, there could be no recovery by plaintiff in the absence of proof that a contract existed between decedent's employer and defendant whereby decedent was authorized to go upon the tracks.   p. 97.

7.   RAILROADS.—*Injury to Persons on Tracks.—Employe . of Construction Company.—Evidence.—Sufficiency.*—In an action for negligent death on the defendant's railroad track of one claimed to have been employed by a contractor at the time engaged in installing a signal system for defendant, evidence merely showing that the contractor was installing a signal system was not sufficient to show contractual relation between him and defendant that would authorize decedent to be upon. defendant's tracks, where it was shown that three railroads crossed at the particular place.   p. 97.

8.   RAILROADS.—*Injury to Persons on Tracks.—Employe of Construction Company.—Negligence.—Evidence.—Sufficiency.*—Where the negligence charged was in an attempt to make a flying switch whereby decedent was run over by a cut of cars while he was on defendant's tracks in the employ of a construction company engaged in installing a signal system, and the undisputed evidence showed that decedent's work did not require him to go upon the tracks, that decedent at his own request was permitted to walk up the west-bound main track some distance to procure a pick, that on looking back he saw a train approaching from the east and he stepped over on the east-bound track and was run down and killed by a cut of cars running west and pushed by an engine, that there was nothing to obstruct decedent's view of the approaching cut of cars, and it was not shown that the cut of cars was being run at a rapid and dangerous speed, nor that defendant's servants had any knowledge of decedent's presence at the place of injury, a judgment for plaintiff is not supported by sufficient evidence.   p. 97.

From Starke Circuit Court; *Francis J. Vurpillat,* Judge.

Action by Mary E. Foust, administratrix of the estate of Samuel A. Foust, deceased, against The Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*G. E. Ross*, for appellant.

*Harry C. Miller* and *Frank M. Trissal*, for appellee.

ADAMS, P. J.—Appellee's decedent was killed on January 21, 1907, at or near the town of North Judson, Indiana, being run over by a car operated by appellant's servants on appellant's railroad. After the usual formal averments, the amended complaint states in detail the location of appellant's tracks and buildings, the location of street and railroad crossings, estimates the number of people using the crossings, and grounds, and proceeds: "That 300 feet north from the north end of the platform of said defendant's passenger station is located the tower and signal house of said defendant's road, and the railroads there that cross it. That previous to the date aforesaid, said defendant had contracted with the Union Switch and Signal Company, to construct and install about, over and upon its tracks, at said town, a system of interlocking devices for use in the operation of its said railroad, and had licensed said Union Switch and Signal Company and its employes to go upon and about said tracks in carrying on the work of constructing and installing said interlocking devices. That the decedent received his injury at the hour of 11:25 a. m. on the date before mentioned, and at the time of receiving it he was an employe of said Union Switch and Signal Company, working along with fifty other laborers, in the construction and installation of said interlocking works, the place where they were carrying on their work being upon said defendant's main tracks, between the north end of the platform of the defendant's passenger station and said tower house, and his and their duties, as such laborers required him and them to be upon and about said defendant's main railroad tracks at the place where said work was being carried on, and where he received his injuries, and he was there at the place where he was injured by the invitation of said defendant, and with the full knowledge of the said defendant, and its servants and agents,

engaged in the operation of its cars and engines, through and in said town of North Judson, and over and upon the tracks where said interlocking works were being installed. That while being at the place above mentioned in carrying on the work that his duties required, the said decedent was exercising due care and diligence for his own safety, and to avoid injury to himself, from the passage and running of cars and engines, on and about the tracks at which he was at work, but notwithstanding his exercise of care, he was, without his own fault, run over and crushed by one of said defendant's freight cars, his death resulting from being so crushed, said car being part of a local freight train which was negligently and carelessly managed and operated by said defendant's servants in charge thereof, in an attempt by them to make what is termed in railroading a 'flying switch' that in attempting to make such 'flying switch' they detached four freight cars from a local freight train of cars, under their care, and with an engine attached to said four cars backed the same at a rapid and reckless rate of speed upon one of the two main tracks at precisely the same moment of time that a through freight train was passing on the other parallel main track of said defendant's railroad. That said decedent seeing said through freight train moving toward him, and to escape injury from it, passed from the main track on which it was coming, and on which he was then at work, over to said other main track, on which said freight cars of said local freight train were being backed, that being the only place to which he could then go to get out of the way of and to escape injury from said moving through freight train; that in so passing over from one track to the other, his back was in the direction from which said backing cars were coming toward him, he at the time of so passing over to said track not knowing and having no means whatever of knowing or ascertaining, that any cars were being backed upon said track, or any reason to suspect or believe that they would be so backed, or that

said track was not clear, and not being in a position in which he could see, hear or know that they were being so backed. That no flagman or other person was upon or about said backing cars, or upon the track upon which they were being backed to give any notice, warning or signal of their approach, nor was any notice, warning or signal of their approach given. The plaintiff avers that the act of making 'flying switch' within the corporate limits of said town was, because of the facts hereinbefore stated, at all times one of great danger to human life, and was particularly so at the time and place and under the circumstances hereinbefore stated, and was entirely unnecessary and wrongful in the operation of said defendant's railroad through said town, and the act of so backing said cars at said time and place, in an attempt to make such 'flying switch' and the omission to give any warning or signal by the persons in charge of said car, of their intention to make such switch, were all acts of negligence, all contributing and concurring to cause, and did cause said decedent's injury and death, he himself being entirely without fault and exercising due care to avoid such injury.''

To this complaint the appellant filed a demurrer for want of sufficient facts, which demurrer was overruled by the court, and the cause put at issue by an answer in denial. Trial by jury, and verdict returned for appellee. Appellant's motion for a new trial was overruled by the court, and judgment rendered on the verdict. Errors assigned and relied upon for reversal are: (1) error of the court in overruling the appellant's demurrer to the amended complaint; (2) error of the court in overruling appellant's motion for a new trial. We will consider the errors in the order of their assignment.

The sufficiency of the complaint in this case, as well as in all cases involving actionable negligence, may be

1. determined by the following tests: Do the facts alleged show a legal duty owing by the defendant to

protect the plaintiff at the time and place of the injury of which complaint is made? Do the facts show a breach of that duty by the defendant? And do the facts further show an injury arising out of such breach? If all of these elements are brought together by proper averments, they constitute actionable negligence. But the absence of any one renders the complaint bad. . A casual reading of the complaint under consideration will disclose a notable absence of direct averments, and a general use of the participle instead of the finite verb. This form of pleading should be condemned, but we think the complaint before us is good independent of the facts attempted to be shown by way of recital.

Appellant strongly urges that as it affirmatively appears from the complaint that appellee's decedent was at the time of his injury and death an employe of the Union Switch and Signal Company, and as such was licensed to go upon the tracks and grounds of appellant, his legal status was that of a mere licensee and no right of action arose in favor of his personal representative on account of his death through the negligence of the appellant. It is true that a mere licensee enjoys the license subject to its attendant risks and to its concomitant perils. The only legal duty owing to a licensee by one granting the license is to protect the former from wilful injury. *Thiele* v. *McManus* (1891), 3 Ind. App. 132, 134, 28 N. E. 327; *Evansville, etc., R. Co.* v. *Griffin* (1885), 100 Ind. 221, 223, 50 Am. Rep. 783; *Indiana, etc., R. Co.* v. *Barnhart* (1888), 115 Ind. 399, 408, 16 N. E. 121; *City of Indianapolis* v. *Emmelman* (1886), 108 Ind. 530, 532, 9 N. E. 155, 58 Am. Rep. 65; *Faris* v. *Hoberg* (1893), 134 Ind. 269, 276, 33 N. E. 1028, 39 Am. St. 261. This rule, however, must be limited to cases where the licensee is granted permission to go upon the premises of the owner for purposes of his own, and in which the owner has no interest. In this case, the averment of the complaint is that appellant had contracted with the immediate em-

ployer of appellee's decedent to install a system of inter-
locking devices, and had licensed decedent, as one of the
contractor's employes, to go upon the tracks in carrying on
the work of installation.   It cannot be said that appellant
had no interest in the work being done, or that the license
granted to the decedent to go upon appellant's tracks was
wholly for a purpose of his own.   The legal status of

4.   the decedent will not be determined by its character-
ization in the complaint, but will be determined from
all the facts averred.   In *Cleveland, etc., R. Co.* v. *Powers*
(1909), 173 Ind. 105, 116, 88 N. E. 1073, 89 N. E. 485, the
court said:   "An invitation is implied where some benefit
accrues or is supposed to accrue to the party extending the
invitation, or is in the interest of both parties, or consists
in going upon the premises upon the business of the owner."
Mr. Campbell, in his treatise on negligence, says:   "The
principle appears to be that *invitation* is inferred where there
is a common interest or mutual benefit, while a license is
inferred where the object is the mere pleasure or benefit of
the person using it."   Campbell, Negligence §33.

5.   Moreover, it appears by a further averment of the
complaint that the duty of decedent as a laborer re-
quired him to be upon appellant's tracks at the place where
the work was being carried on and where he received his
injury, and that he was in the place where he was injured
by the invitation of appellant, with the full knowledge of
appellant, its servants and agents.   In the recent case of
*East Hill Cemetery Co.* v. *Thompson* (1913), *post* 417, 97
N. E. 1036, this court held that a complaint which averred
that the plaintiff was lawfully in and upon the grounds and
premises of the defendant, by and with the consent and in-
vitation of the defendant, was sufficient to show that plain-
tiff was not a trespasser or a licensee.   And in the case at
bar we think the averment that decedent was upon the tracks
by the invitation of appellant states a fact and not a conclu-
sion, and raises a legal duty against appellant to the same

extent as if decedent had been one of appellant's employes. There was no error in overruling the demurrer to the complaint.

The second specification of error, the overruling of appellant's motion for a new trial, calls in question the sufficiency of the evidence to support the verdict. Appellant introduced no evidence, but at the conclusion of appellee's evidence, moved the court to instruct the jury to return a verdict in its favor. This motion was overruled by the court, which ruling was assigned as one of the grounds for a new trial. It is first urged that there is no proof of any

6. contract between the Union Switch and Signal Company and the appellant. Such proof is important, as the right to recover for the negligence of appellant is dependent upon some contractual relation being shown between decedent's employer and the appellant, whereby decedent was authorized to go upon appellant's tracks. There was no evidence whatever of invitation express or

7. implied, the sole reliance being upon the alleged contract. The only evidence upon this subject was by the witness Miller, who testified that Foust at the time of his injury and death was working for the Union Switch and Signal Company; and the witness Bernethy, who testified that an interlocking system was being installed by contractors. As it is shown that three railroads crossed at this point, no lawful inference could be drawn from the evidence offered that would support the allegations of the complaint. Failure to make this proof was fatal to the right to recover.

Again appellant insists that there was no proof of the negligence charged in the complaint. It will be recalled that the negligence charged was that decedent on the

8. date of his injury was employed by the Union Switch and Signal Company, working with fifty other laborers in the construction and installation of interlocking works on the defendant's main tracks, between the north end of

the platform of defendant's passenger station and the tower house, a distance of 300 feet; that it was necessary for such laborers to be upon appellant's tracks where the work was carried on; that a cut of cars was negligently and carelessly managed by the defendant's servants, in an attempt to make a "flying switch" whereby the cars were backed on one of the two main tracks at a rapid and reckless rate of speed at the same moment a through freight train was passing upon the other main track. The appellant was clearly negligent in attempting to make a "flying switch" over 300 feet of its main track where fifty men were employed. The proof, however, gives no support to the allegations of the complaint. The undisputed facts are that the decedent on the date of his injury was employed by the Union Switch and Signal Company, and engaged with one Lewis Miller in mixing concrete near the tower house and the Three I crossing. His work did not require him to go upon the tracks. Soon after commencing work, the decedent with Miller and two others had gone up the track about 900 feet from the place where he was employed for a load of gravel, which had been unloaded on the space between the two main tracks. A pick was left at the place where the gravel was secured, and shortly before noon, the foreman directed Miller to go and get it. Decedent asked that he be permitted to get the pick, and upon consent being given started northwest on the westbound main track. He had proceeded a short distance north of the Erie crossing, when, by looking back, he discovered a through freight approaching from the east. He then stepped over on the east-bound track, and was run down and killed by a cut of cars running west, pushed by an engine. There was nothing to obstruct his view of the approaching cut of cars, and no one saw him killed. The servants of appellant were not attempting to make a flying switch at the time decedent was killed, but the cars were being run westward for the purpose of attempting a flying switch on

the return eastward. There was no evidence that the cars were being run at a rapid and dangerous rate of speed. The decedent was not in the place where the complaint alleges he was employed, and where his duties required him to go upon the tracks, but was at a point five or six hundred feet west of the tower and beyond the Erie crossing. There was no flagman on the first car to give warning, and no signals were given, but it is not averred in the complaint that it was the duty of appellant to give signals or to provide such flagman.

It was not shown by the evidence that appellant's employes operating the engine and cut of cars had any knowledge of the presence of the decedent at the place of his injury, or had any knowledge that workmen or other persons were likely to be in that immediate vicinity. There was no street or highway crossing within a quarter of a mile in either direction. That the decedent knew of the cut of cars is evident from the fact that before going over the Erie crossing, he spoke to one Trinosky, a section man engaged in clearing up the tracks between the Erie and the Three I crossings, and said to him, "look out, they are coming over the cross-over." That he had reference to the switching cars is evident from the fact that the cross-over between the two main tracks could not be used by the west-bound freight train then coming forward on the west-bound track. Without considering other errors assigned as causes for a new trial, it already appears that the judgment must be reversed. The case presents many features likely to arouse sympathetic interest, but the rules of law cannot be adjusted to meet the exigencies of individual misfortune.

The judgment is reversed with instructions to the court below to sustain appellant's motion for a new trial.

NOTE.—Reported in 99 N. E. 493. See, also, under (1) 29 Cyc. 565; (2) 31 Cyc. 71; (3) 33 Cyc. 756, 764; (4) 29 Cyc. 567; 33 Cyc. 865; (5) 29 Cyc. 566; 33 Cyc. 866; (6) 33 Cyc. 889. As to one's legal duty toward others in regard to safety and liability for

the breach, see 77 Am. St. 26. As to trespassers on railroad track and what duty, if any, the company owes them, see 30 Am. St. 53. For a discussion of making a flying switch as negligence, see 10 Ann. Cas. 15; Ann. Cas. 1912 D. 342.