## LAGLER *v.* ROCH.

[No. 8,177. Filed February 19, 1914. Rehearing denied May 26, 1914. Transfer denied October 13, 1914.]

1. MASTER AND SERVANT.—*Injuries to Servant.*—*General Verdict.*— *Effect.*—In a servant's action against the master for personal injuries, a general verdict for the plaintiff was a finding that defendant was negligent in the manner charged, that such negligence was the proximate cause of the injury, and that plaintiff did not assume the risk and was without contributory negligence. p. 85.

2. TRIAL.—*Verdict.*—*Answers to Interrogatories.*—A general verdict will stand as against the jury's answers to interrogatories unless the latter are inconsistent with it.   p. 85.

3. MASTER AND SERVANT.—*Injuries to Servant.*—*Trial.*—*Answers to Interrogatories.*—*Conclusions of Law.*—In a servant's action against the master for personal injuries, answers of the jury to interrogatories that the injury to plaintiff was purely accidental, that plaintiff and another were fellow servants, and that they were performing a duty which they owed as fellow servants,

were conclusions of law, and hence could not be considered in determining whether the answers were sufficient to overcome the general verdict for plaintiff. p. 85.

4. MASTER AND SERVANT.—*Injuries to Servant.—Assumption of Risk.—Answers to Interrogatories.*—In an action for injuries to a servant by falling from a building on which he was employed, where the complaint alleged on the subject of nonassumption of risk that plaintiff, by reason of his youth and inexperience, did not understand the danger and hazard of working high above the ground without proper scaffolding, and that he had not been told of same, neither the presumption arising from a failure to aver the contrary, that plaintiff knew the physical surroundings, nor the answers by the jury to interrogatories that plaintiff knew of the existence of an open court, and that if he fell he would fall to the bottom of it, were sufficient to overcome the general verdict for plaintiff in so far as the element of the assumption of risk was concerned, since a knowledge of physical conditions does not necessarily compel a presumption of knowledge of results that flow from such conditions. pp. 86, 87.

5. MASTER AND SERVANT.—*Assumption of Risk.—Minor Employe.*—Ordinarily a servant not only assumes all the hazards necessarily incident to the service, but also those that are open and obvious, or to be discovered by the use of reasonable care, whether necessarily incident to the service or not, and the rule is applicable notwithstanding such servant is a minor, if he is of sufficient age and discretion to comprehend the dangers of his employment. p. 87.

6. MASTER AND SERVANT.—*Injuries to Servant.—Complaint.—Negligence of Fellow Servant.*—In an employe's action for injuries in falling from a scaffold, where the complaint expressly charged that defendant negligently constructed and maintained the scaffold in the manner set out, but not disclosing what relation another who was working with plaintiff bore to plaintiff, was broad enough to sustain proof that plaintiff's colaborer was a vice principal, and it was not necessary to allege that the injury was not the result of the negligence of a fellow servant. p. 88.

7. MASTER AND SERVANT.—*Fellow Servant.—Answers to Interrogatories.*—In an action for injuries to an employe by falling from a scaffold while at work on the skylight of a building, answers to interrogatories showing that plaintiff and another were working alone at the time, that the latter was doing a part of the manual labor and detail work, that both were in the employ of defendant, that both participated in placing the plank from which plaintiff fell, and that defendant was not present and did not direct the placing of such plank, but that it was placed in a manner chosen by plaintiff and his colaborer, were sufficient to show plaintiff and his colaborer were fellow servants. p. 89.

8. MASTER AND SERVANT.—*Master's Duty.—Safe Place of Work.*— While it is the master's duty to furnish the servant a reasonably safe place in which to work and to exercise reasonable care in maintaining it in such condition, where he has used reasonable care in the selection of materials from which to erect a structure, with the design and purpose that the servants shall build it for their own use, and the servants, with knowledge of such design and purpose, erect such structure from such material in accordance with their own judgment, the master can not be held liable for injuries sustained by one of such servants by reason of defects in such structure growing out of the manner of the construction thereof.  p. 89.

9. MASTER AND SERVANT.—*Negligence of Fellow Servant.*—Where a coservant handles or places a safe instrumentality so carelessly as to convert it, for the time being, into a dangerous agency, the master, if free from fault, is not liable for a consequent injury to a servant.  p. 90.

10. MASTER AND SERVANT.—*Injuries to Servant.—Contributory Negligence.*—When a servant suffers an injury by his knowingly applying a reasonably sufficient appliance to an improper use, or by his misuse of it, without the knowledge or acquiescence of the master, the master is not liable.  p. 91.

11. MASTER AND SERVANT.—*Injuries to Servant.—Liability.—Concurrent Negligence.*—Where an employer was negligent in furnishing a scaffold insufficient in width, and such negligence was a proximate or concurring cause in producing injury to plaintiff, he would be liable, though the dangerous manner in which the scaffold was placed was the act of an employe.  p. 91.

12. MASTER AND SERVANT. — *Injuries to Servant. — Verdict. — Answers to Interrogatories.* — Where answers to interrogatories showed that the injuries received by plaintiff in falling from a scaffold on which he was employed resulted from the act of plaintiff and another in placing the scaffold in such manner that it could slip and fall, a general verdict for plaintiff could not stand. p. 92.

From Marion Circuit Court; *Charles Remster,* Judge.

Action by Frank Lagler against Tobias Roch. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*Jacob Steinmetz* and *James M. Ogden,* for appellant.

*Elmer E. Stevenson,* for appellee.

.CALDWELL, J.—Appellant's complaint alleges substantially the following facts: That appellee, as contractor, had

full charge and management of the constructing and erecting of the iron framework for the skylight on the roof of the Linden Hotel in the city of Indianapolis; that on November 12, 1903, appellant, as an employe of appellee, was assisting in placing the channel bars in said framework, at an elevation of about sixty feet above the ground, and that to that end he was standing on a scaffold furnished by appellee; "that defendant carelessly and negligently constructed and maintained the said scaffolding on which plaintiff was standing of loose boards, insufficient in number and disconnected, and that defendant was negligent in furnishing and providing said insecure and insufficient scaffolding." That appellant was seventeen and one-half years of age, inexperienced, and that all his work theretofore had been on the ground, and that he did not understand, and had not been told of the danger and hazard of working so high above the ground without the proper scaffolding, all of which facts and circumstances were well known to the defendant. "That defendant was negligent in failing to furnish a safe place for plaintiff to work in the construction of said skylight, by failing to furnish the proper protection and scaffolding, while said plaintiff was in the performance of his duties, and said defendant had knowledge that this place was an unsafe place to work, and had knowledge of the improper protection, but the said plaintiff was without knowledge that said place was unsafe in which to work." That while appellant was engaged at said work, "without fault on his part contributing thereto, but on account of said boards on which plaintiff was standing being loose, unnailed and disconnected, and insufficient in number and width to cover and floor said scaffold, as aforesaid, one of said boards slipped as this plaintiff stepped upon the same, and thereby precipitated plaintiff through said scaffold to the ground floor of said building," and that appellant thereby suffered injuries specifically described.

Issues having been formed on the complaint, the cause was

tried by a jury, which returned a general verdict in favor of appellant, assessing his damages at $4,500. With the general verdict, the jury returned answers to certain interrogatories. The court overruled appellant's motion for judgment on the general verdict, and, on appellee's motion, entered judgment in appellee's favor on the answers to the interrogatories, notwithstanding the general verdict. The error assigned is based on the overruling of the former motion and the sustaining of the latter.

By the answers to the interrogatories, the jury found in substance the following facts: That appellant was seventeen and one-half years old when injured, and that at said time, he was in full possession of his senses of sight and hearing, and that he is a person of ordinary intelligence; that at his father's suggestion, he sought and obtained employment of appellee, not knowing in full the business in which appellee was engaged; that appellant had had several years' prior experience working in factories, and had been working for appellee six months immediately before receiving his injuries, and that he had been engaged for two days at said work of preparing and placing said framework. He knew how said skylight was constructed, and was acquainted with its parts. Appellant received his injuries on a frosty morning; that he and Albert Neitzel were at the time working alone on said framework. When appellant fell, Neitzel was working near the center of the trusses, placing a rod between the two purlines. Some boards had been placed for a walkway from the center of the trusses east to the east wall of the open court. Just before appellant was hurt, he had brought a nut to Neitzel, in going to get and in returning with which, he walked on said walkway, which was not a safe way to go. About the center of said trusses, there was a platform several feet wide, composed of boards, and above this platform was another and smaller one, on which the workmen stood. Appellant had on comparatively new shoes, but Neitzel had not told him not to wear new

shoes while working at said work. There was an open court about thirty-five feet square extending from the first floor to said framework. Appellant knew of the existence of said open court, and knew that if he fell, he would fall to the bottom of it. Appellant knew that it was safer to return to the corner after delivering said nut, by walking on said board walkway, rather than by the base of the. truss, and he could not have safely returned by the base of the truss. Appellant and Neitzel, about twenty minutes before appellant was injured, had placed a board extending from the north brick wall southeast to the base of one of the trusses, in such a manner as that the southeast end of the board rested on the slanting part of said base, and so that the said southeast end was about one foot higher than the northwest end. This board was six or seven inches wide, two inches thick, and ten or eleven feet long. Although they could have fastened this board, they did not in any manner do so, and appellant knew that it was not fastened. He had placed the board in the manner chosen by himself and Neitzel. Before the time when appellant fell, he held to the purline each time when walking on the board. Appellant, while walking on this board, having hold of a monkey wrench and channel bar, undertook to turn around, and thereupon said board slipped, and caused appellant to fall, and he knew at the time that there was nothing under him but the first floor at the bottom of the court. He fell while turning, holding to the monkey wrench and channel bar. He could have held to the purline or parts of the truss if he had not fallen. The board slipped because appellant and Neitzel had placed one end of it about a foot higher than the other, the higher end resting on the slanting piece of an iron truss, and because it was not fastened. Appellee did not place said board in said position, and did not tell appellant and Neitzel to so place it. Appellee did not know appellant was using said board for a walkway or a scaffold. There were no other boards near at hand that appellant could have used to

make a walkway from the north brick wall to the lower
chord of the truss. Appellee did not know that appellant
was where he was when he fell, but he did know that he was
likely to be there. Appellee did not construct or maintain
any scaffold on which appellant was when he fell, and ap-
pellant did not fall through any scaffold. Appellant and
Neitzel at the time when appellant was injured were both
working for appellee, doing a part of the manual labor and
detail work in constructing and placing said skylight frame.
At said time both of them were performing a duty which
they owed, as fellow servants, to their common employer,
and they were fellow servants in the employ of appellee.
The injuries to appellant were purely accidental.

The general verdict amounts to a finding in favor of
appellant in each of the following respects: (1) That
appellee was guilty of negligence as charged by pro-
1. viding for him, as a youthful and inexperienced
workman, a scaffold insufficient in width and insecure
by reason of it being composed of loose, unnailed and dis-
connected boards, and by failing to furnish appellant a safe
place in which to work by failing to furnish the proper pro-
tection and scaffolding, appellee having knowledge of the
facts. (2) That said negligence was the proximate cause
of appellant's injury. (3) That appellant did not as-
sume the risk of working at said work, with said insuffi-
cient scaffold, and that he was not guilty of negligence con-
tributing to his said injury. The general verdict
2. must stand, unless the facts found by the jury in an-
swer to interrogatories are inconsistent with it, which
question we proceed to consider.

There are certain of the answers to interrogatories that
must be excluded from consideration. Thus, it is answered
that the injury to appellant was purely accidental.
3. To determine that an occurrence was a pure accident
excludes the element of guilt or negligence as a
causal force. *Nave* v. *Flack* (1883), 90 Ind. 205, 210, 46

Am. Rep. 205. The process of such exclusion necessitates the application of principles of law to the facts proven. Since the existence or nonexistence of negligence can not be determined otherwise than by recourse to legal principles, where a certain result is reached by applying the artificial rules of law to a state of facts, such result is a conclusion of law. Said answer is, therefore, a conclusion of law, and must be excluded. *Marietta Glass Co.* v. *Pruitt* (1913), 180 Ind. 434, 102 N. E. 369; *Avery* v. *Nordyke & Marmon Co.* (1905), 34 Ind. App. 541, 558, 70 N. E. 888; *Board, etc.* v. *Bonebrake* (1896), 146 Ind. 311, 317, 45 N. E. 470; *Ohio, etc., R. Co.* v. *Stansberry* (1892), 132 Ind. 533, 535, 32 N. E. 218; *Pittsburgh, etc., R. Co.* v. *Spencer* (1884), 98 Ind. 186, 189; *Levins* v. *Rovengo* (1886), 71 Cal. 273, 12 Pac. 161. The answers that appellant and Neitzel were fellow servants in the employ of appellee, and that they were performing a duty which they owed as fellow servants to their common employer are of a like nature as said answer that the injury was purely accidental, and must, therefore, be excluded.

The answers of the jury to the interrogatories are not inconsistent with the general verdict, in so far as the latter amounts to a finding that appellee was guilty of negligence in furnishing and maintaining said scaffold. As to whether such established negligence may stand as the proximate cause of the injury, remains to be discussed.

4. The averments on the subject of nonassumption of risk are to the effect that appellant, by reason of his youth and inexperience, did not understand the danger and hazard of working so high above the ground, without proper scaffolding, and that he had not been told of the same. On this subject, as we have said, since the complaint does not aver the contrary, appellant is presumed to have known the physical surroundings, such as the height at which he was working, and the existence, composition and condition of said scaffolding. In answer to the interrogatories, the

jury found that he knew of the existence of said open court, and that if he fell, he would fall to the bottom of it. Such presumptions and findings, however, are not of themselves sufficient to destroy the effect of the general verdict, in so far as concerns the element of the assumption of risk.

5. True, that a servant, in accepting employment, assumes all the hazards and dangers necessarily incident to the service, and also risks and hazards of the service that are open and apparent whether necessarily incident to the service or not. Such assumption includes not only those hazards and dangers that are known, but also such as may be discovered by the exercise of reasonable care and diligence. *Indianapolis Traction, etc., Co.* v. *Holtsclaw* (1908), 41 Ind. App. 520, 82 N. E. 986. Even if such servant is a minor, yet if he is of sufficient age and discretion to comprehend the dangers of his employment, the fact that he is a minor is not controlling. *Levey* v. *Bigelow* (1893), 6 Ind. App. 677, 34 N. E. 128; *Evansville, etc., R. Co.* v. *Henderson* (1893), 134 Ind. 636, 33 N. E. 1021.

4. However, a knowledge of physical conditions does not necessarily compel the presumption of a knowledge of results that flow from such conditions. In a given case, the danger may be patent or open to observation, and yet a servant, by reason of being uninstructed, youthful and inexperienced, may be incompetent fully to understand and appreciate the danger. In the matter under consideration, the answers to the interrogatories are not so inconsistent with the general verdict as to be destructive of the latter. *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297, 53 N. E. 235; *Salem Stone, etc., Co.* v. *Griffin* (1894), 139 Ind. 141, 38 N. E. 411; *Collins* v. *Greenfield* (1898), 172 Mass. 78, 51 N. E. 454; *Gulf, etc., R. Co.* v. *Newman* (1901), 27 Tex. Civ. App. 77, 64 S. W. 790; *Murphy* v. *City Coal Co.* (1899), 172 Mass. 324, 52 N. E. 503; 1 Labatt, Master and Servant §320; 20 Am. and Eng. Ency. Law 98; *Holcomb* v. *Norman* (1911), 47 Ind. App. 87, 91 N. E. 625.

As has been indicated, the jury found that appellant did not fall through any scaffold, and that when he fell he was not standing on any scaffold constructed and 6. maintained by appellee. On first view, the answers would seem to be inconsistent with the general verdict, as based on the allegations of the complaint respecting the manner in which said injuries were received. Since appellant was not standing on a scaffold constructed and maintained by appellee, it might be inferred that whatever scaffolding was used in prosecuting said work, was constructed by the workmen, rather than by appellee. However, these answers may be harmonized with the general verdict by presuming that the jury ascribed to the word "scaffold" a meaning exclusive of a mere collection of boards. There are other answers, as above set out, that appellant and Neitzel, without the knowledge or consent of the appellee, placed an apparently sufficient board in an insecure position, and that appellant's act in attempting to turn on said board, caused it to slip and fall, and that appellant was thereby precipitated to the bottom of the court, and was thereby injured. It is necessary for us to consider the effect of these findings, and to that end, first the relation that Neitzel sustained to appellant and to appellee and to said work. It is argued that Neitzel was a vice principal, rather than a fellow servant with appellant. There are no averments in the complaint from which his relation to the transaction may be deduced. However, the complaint charges negligence as against appellee, rather than that he was guilty of negligence through or by the act or omission of some servant or employe. A complaint with such averments need not negative that the injury resulted from the negligence of a fellow servant. The complaint in this respect is broad enough to sustain proof that Neitzel was a vice principal rather than a fellow servant. *Ohio, etc., R. Co.* v. *Collarn* (1881), 73 Ind. 261, 38 Am. Rep. 134; *Bedford, etc., R. Co.* v. *Brown* (1895), 142 Ind. 659, 42 N.

E. 359; *Hoosier Stone Co.* v. *McCain* (1892), 133 Ind. 231, 31 N. E. 956; *Brazil, etc., Coal Co.* v. *Cain* (1884), 98 Ind. 282; 13 Ency. Pl. and Pr. 906.

As bearing on the subject under consideration, the answers show the following facts: Appellant and Neitzel were working alone on said framework, and at the time appellant received his injuries, Neitzel was placing the rod between the two purlines; they were both working for appellee, and both were doing a part of the manual labor and detail work in constructing and placing said framework. Both participated in placing said board from which appellant fell, and appellant placed said board in the manner chosen by himself and Neitzel. Appellee did not place said board, and did not tell appellant and Neitzel to place it in position. Such answers are sufficient to show that appellant and Neitzel were fellow servants, rather than that the latter was a vice principal. *Chicago, etc., R. Co.* v. *Barker* (1908), 169 Ind. 670, 83 N. E. 369, 17 L. R. A. (N. S.) 542, 14 Ann. Cas. 375; *Southern Ind. R. Co.* v. *Martin* (1903), 160 Ind. 280, 63 N. E. 886; *Standard Pottery Co.* v. *Moudy* (1905), 35 Ind. App. 427, 73 N. E. 188; *Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689, 700, 68 N. E. 262, 63 L. R. A. 460; *Indiana Car Co.* v. *Parker* (1885), 100 Ind. 181.

It is not contended that the plank from which appellant fell was defective. Under the findings, appellant did not fall from said plank by reason of its insufficiency in either strength or dimension. It is expressly found, that the plank slipped on account of the position in which appellant and Neitzel placed it, and because they did not fasten it, and that appellant fell by reason of the slipping of the plank. It is found also that appellee had nothing to do with the placing of said plank, and that he neither authorized it to be placed, nor had any knowledge that it was so placed. While it is the duty of the master to furnish the servant a reasonably safe place in which to work

and to exercise reasonable care in maintaining it in such condition, this rule does not apply where by the negligence of the servants the place is rendered unsafe, without the master's fault or knowledge. When the master in person, or by another provides or undertakes to build for the use of his servants a scaffold or like structure, and turns it over to such servants in a completed or supposedly completed state for their use in prosecuting their work for the master, it is undoubtedly his duty to exercise reasonable care to see that it is reasonably safe for the contemplated purposes. But where the master has used reasonable care in the selection of materials from which to erect such a structure, with the design and purpose that the servants shall build it for their own use, and where the servants with knowledge of such design and purpose erect such structure from such material in such manner as their own judgment dictates to them, the master having no direction or control of such construction, he can not be held liable for injuries sustained by one of such servants, by reason of defects in such structure growing out of the manner of the construction thereof. *Perigo* v. *Indianapolis Brewing Co.* (1899), 21 Ind. App. 338, 52 N. E. 462; *American Carbon Co.* v. *Jackson* (1900), 24 Ind. App. 390, 56 N. E. 862; 26 Cyc. 1113-1116. As has been said, there is no claim that said plank was 9. defective or that the injury to appellant resulted from its insufficiency. The immediate cause of said injury was the use to which said plank was applied and the manner in which it was placed. Both appellant and his coservant, Neitzel, participated in the act of placing said plank. In so far as concerns such act as performed by Neitzel, it seems to be the universal rule that where a delinquent coservant handles or places a safe instrumentality so carelessly as to convert it, for the time being, into a dangerous agency, the master, if free from fault, is not liable for a consequent injury to a servant. *Indianapolis Traction, etc., Co.* v. *Mathews* (1912), 177 Ind. 88, 98, 97 N. E.

320; *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671, 689, 80 N. E. 529, 14 L. R. A. (N. S.) 418; *Southern Ind. R. Co.* v. *Harrell, supra; Chicago, etc., R. Co.* v. *Hamilton* (1908), 42 Ind. App. 512, 85 N. E. 1044; *McDermott* v. *City of Boston* (1882), 133 Mass. 349; *Tricka* v. *Burlington, etc., R. Co.* (1896), 100 Iowa 205, 69 N. W. 422; *McLaughlin* v. *Camden Iron Works* (1897), 60 N. J. L. 557, 38 Atl. 677; *Kliegel* v. *Weisel, etc., Mfg. Co.* (1893), 84 Wis. 148, 53 N. W. 1119; *Ryan* v. *Smith* (1898), 85 Fed. 758, 29 C. C. A. 427; *McGinty* v. *Athol, etc., Co.* (1892), 155 Mass. 183, 29 N. E. 510; *Tedford* v. *Los Angeles Elec. R. Co.* (1901), 54 L. R. A. 85, note; 2 Labatt, Master and Servant §§590, 613.

Here appellant participated in the act of placing said plank. Under such circumstances there are additional reasons for applying the foregoing rule. *Devlin* v. *Phoenix Iron Co.* (1897), 182 Pa. St. 109, 37 Atl. 927; *St. Louis, etc., R. Co.* v. *Morgart's Admx.* (1885), 45 Ark. 318; *Illinois Cent. R. Co.* v. *Winslow* (1894), 56 Ill. App. 462; 26 Cyc. 1260; 5 Thompson, Negligence (2d ed.) §5429; 1 Labatt, Master and Servant §325. As has been said, there is no claim that said plank was defective or that the injury resulted from its insufficiency. The immediate occasion of the injury was the use to which said plank was applied. When a servant suffers an injury occasioned by his knowingly applying a reasonably sufficient appliance to an improper use or by his misuse of it, without the knowledge or acquiescence of the master, the master can not be held liable for such injury. *Pittsburgh, etc., R. Co.* v. *Foust* (1913), 53 Ind. App. 90, 99 N. E. 493; *Southern Ind. R. Co.* v. *Harrell, supra; Standard Pottery Co.* v. *Moudy, supra; Bedford, etc., R. Co.* v. *Brown, supra;* 26 Cyc. 1260.

Included in the charge of negligence, as contained in the complaint, is an averment to the effect that appellee negligently constructed and maintained said scaffold, composed of boards, "insufficient in number and width to cover and floor said scaffold completely" and that

appellant was negligent in failing to furnish a safe place for appellant to work "by failing to furnish proper protection and scaffolding", and that "on account of said boards being loose, unnailed and disconnected and insufficient in number and width to cover and floor said scaffolding, as aforesaid, one of said boards slipped as the plaintiff stepped upon the same, and thereby precipitated" appellant through said scaffold, etc. Said allegations do not accurately describe the manner and cause of said occurrence as measured by the answers to the interrogatories. The board that slipped was placed in position by appellant and Neitzel, who knowingly left it unfastened. It may be said, however, that the general verdict establishes as true that said scaffold was insufficient in width and that had it been otherwise, appellant, in falling would have been caught and sustained by said scaffolding, and thus have escaped injury. Granting that this is true, and that appellee was negligent in furnishing a scaffold insufficient in width and that such negligence was a proximate or concurring cause in producing the injury, then had the act of placing said plank been the act of Neitzel alone, the appellant neither participating in said act nor having knowledge, or reasonable means of knowledge, of it, appellee would be liable. *Fort Wayne, etc., Traction Co.* v. *Roudebush* (1909), 173 Ind. 57, 88 N. E. 676, 89 N. E. 369; *Burke* v. *Keystone Mfg. Co.* (1897), 19 Ind. App. 557, 560, 48 N. E. 382; *Marietta Glass Co.* v. *Pruitt, supra.*

However, it can not be said that any act or omission of appellee caused appellant to slip and fall. The act of appellant and Neitzel in so placing said plank and in

12. knowingly leaving it in said unfastened condition was expressly found by the jury to have been the cause of appellant falling, and as a consequence, we can not escape the conclusion that in any view of the case, such act in which appellant participated, at least concurred with the omission of appellee in producing said injury, and as a proximate

cause thereof. We, therefore, hold that the answers to the interrogatories are in irreconcilable conflict with the general verdict, and that the trial court did not err.

Judgment affirmed.

Note.—Reported in 104 N. E. 111. As to the duty of the master to furnish the servant safe means and appliances to work with, see 92 Am. Dec. 213; 21 Am. Rep. 579. As to the liability of a master for injuries to a servant caused by the fall of scaffolding, see 18 Ann. Cas. 611; Ann. Cas. 1913 B 1123. As to assumption of risks by minor employes, see 1 L. R. A. (N. S.) 279. For servant's assumption of risk of danger imperfectly appreciated, see 4 L. R. A. (N. S.) 990. On servant's assumption of obvious risks of hazardous employment, see 1 L. R. A. (N. S.) 272. As to servant's assumption of risk from latent danger or defect, see 17 L. R. A. (N. S.) 76; 38 L. Ed. U. S. 391. As to the master's liability for negligence of coservant in respect to preparation of scaffolds, staging, etc., see 54 L. R. A. 142. See, also, under (1, 7, 12) 26 Cyc. 1513; (2) 38 Cyc. 1927; (3) 38 Cyc. 1921; (4) 38 Cyc. 1927; 26 Cyc. 1199; (5) 26 Cyc. 1218; (6) 26 Cyc. 1394; (9) 26 Cyc. 1321; (11) 26 Cyc. 1302.