TROY L. CHAMBERS v. PALMA EDNEY, ADMINISTRATRIX OF THE
  ESTATE OF CALVIN EDNEY.

(Filed 20 November, 1958)

1. **Trial § 22a—**

   On motion to nonsuit, the evidence must be taken in the light most
   favorable to plaintiff, giving him the benefit of every reasonable infer-
   ence to be drawn therefrom. G.S. 1-183.

2. **Negligence § 19b(1)—**

   In an action to recover for actionable negligence, plaintiff must
   show failure on the part of defendant to exercise proper care in the
   performance of some legal duty which defendant owed plaintiff under
   the circumstances in which they were placed, and that such negli-
   gent breach of duty was the proximate cause of the injury.

3. **Negligence § 5—**

   Proximate cause is that cause which produces the injury in con-
   tinuous sequence and without which it would not have occurred, and
   one from which any man of ordinary prudence could foresee that such
   result was probable under all of the facts as they existed.

4. **Negligence § 19b(1)—**

   If plaintiff's evidence fails to establish either defendant's negli-
   gence or that it was a proximate cause of the injury, nonsuit is proper.

5. **Trial § 19—**

   Whether there is enough evidence to support a material issue is a
   matter of law.

6. **Master and Servant § 15a—**

   Where, under the terms of the contract of employment, an employee
   is required to construct an instrumentality, the employer's duty is dis-
   charged by furnishing suitable materials with which it may be con-
   structed, and the employer is not liable for an injury caused by a
   defect in its construction or adjustment.

7. **Same: Master and Servant § 20—Evidence held insufficient to support
   recovery for injuries from fall by employee constructing a scaffold.**

   Evidence tending to show that an employee engaged in constructing
   a scaffold was experienced in handling lumber, was in a position to
   observe the materials he himself was using, and had an opportunity
   to make examination of the materials, that he stepped on a board,
   which broke under his weight, causing him to fall to his injury, with
   testimony by him that the board looked sound and without evidence
   to indicate that the employer could have anticipated that plaintiff
   would step on a board of such dimensions, fails to show negligence on
   the part of the employer proximately causing the fall, but further,
   if it be conceded that there was evidence of negligence of the em-
   ployer, the evidence discloses contributory negligence on the part of
   the employee.

APPEAL by plaintiff from *Campbell, J.,* at Regular February
1957, Civil Term of BUNCOMBE.

CHAMBERS *v.* EDNEY.

Civil action to recover for personal injuries sustained by plaintiff in a fall from a scaffold being constructed by him and another on side of a tobacco barn, allegedly as proximate result of negligence of defendant.

The record indicates that the action was originally instituted against Calvin Edney and his wife, Palma Edney, as tenants by the entirety; that after summons was served Calvin Edney died, and his widow, Palma Edney, duly qualified as administratrix of his estate, and was duly and properly made a party defendant in this action, and as such has duly filed answer. And the record shows that the parties "stipulated that the property upon which the tobacco barn in question was being constructed was the sole and exclusive property of Calvin Edney, deceased," and that thereupon plaintiff took a voluntary nonsuit as to the individual defendant, Palma Edney.

Upon the trial in Superior Court plaintiff offered evidence tending to show substantially the following: Beginning on 25 August, 1954, plaintiff did work and labor with others in the construction of a tobacco barn on land of Calvin Edney near Mars Hill. This was done with the knowledge of Calvin Edney. Plaintiff helped around the barn, and in putting the roof on. He worked until the 3rd of September, 1954. The roofing was finished during the morning of that day. After lunch plaintiff resumed work on the barn building a scaffold. He climbed back up inside the barn holding on between the boards to the level of 22 feet above the ground. There were spaces between the boards that made a sort of natural ladder. Floyd Moore was working on the scaffold on same level with plaintiff. There was nothing between that level and the ground. Hoover Moore was assisting in the operation of building the scaffold. He was on the ground "tackling" up planks to plaintiff and Floyd Moore, that is, "pulling planks up" to them "by using a rope hoist" operated from a tackle on the top of the barn, "right up in the column of the barn." For support of platform of scaffold, pieces of lumber had been fastened in the wall and projected out about 3 feet. They were made of oak boards about 4 feet long. They * * * were of "good sound stuff". These projecting pieces, or supports, were some 12 feet apart. In the language of plaintiff's father, "The boys were putting boards across the projecting pieces, just laying them up there."

About four such planks had been hoisted up to the position where plaintiff was on the scaffold. In plaintiff's language, "they were placed over on this side here. Floyd Moore assisted me in placing these boards. They were just laid across here, across those arms coming out this way * * * ." Plaintiff helped to lay one side and, as he said, "One board over here * * * at that

stage of it there was another board hoisted up to my position * * * I was standing over here and I couldn't reach this board over here, and I had to step out on it and when I stepped out on it and put my weight on the board, it just broke without any warning * * * With reference to the board that I couldn't reach, I was going to take it up and lay it right beside the one that broke with me * * * The cross pieces on the scaffold were about 7 or 8 inches wide, one inch thick and 8 to 12 feet long. They were all different kinds of boards. * * * The particular one that broke was just an old rough looking board. When the board broke, I fell to the ground," sustaining injury.

Before the injury plaintiff did sawmill work, practically all of the time, and farming. The sawmill work was packing lumber. Plaintiff testified, "On the day I got hurt, I weighed 177, about maybe 180."

Then on cross-examination plaintiff testified: "I was 21 and ½ when this accident occurred * * * There was a pile of lumber down on the ground just below me. I don't know just how much material was there on the ground; quite a large pile of boards of all sorts and sizes. Hoover Moore was hoisting the boards up to me * * * Just one at a time * * * When I laid the board down the whole thing was in my view so I could look at it, see it from one end to the other. * * * In other words, there was distance of some 12 feet between these two supports and that board was about one inch thick, no less. It was about 6, 7, or 8 inches wide. I did not have the same opportunity to look at that board as the man on the ground * * * I could see one side of it * * * If I had turned it over I could have seen both sides. I did not turn it over to see what was on the other side. The board looked good enough to me. It looked like a sound board. There was not anything discoverable by looking at it. I could not tell it was not a sound board by looking at it."

Then plaintiff was asked these two questions, to which he answered as indicated: "Q. And the board is hanging there and you could just turn it and look on both sides as easily as you pleased, couldn't you? In fact it had to be swung up here before you could handle it, didn't it? A. Yes, sir. Q. So you could easily see both sides of that board before you laid it down, couldn't you, if you had looked? A. If you had looked you could."

Then plaintiff continued: "I said the Moore boy was down on the ground hoisting those boards from a large pile of boards which were available down on the ground * * * It was mill cull lumber * * * that is, rough lumber that is customarily used in making barns * * * This was the customary type of lumber that was used in Madison County for making tobacco barns in some places. This is a better barn than the average Madison

County barn. It is a gretty good barn * * * . I was holding
on to the vertical joist, and I fell in spite of it * * * When I
was working at the sawmill I packed the first-grade lumber,
cull lumber. I handled the board. * * * I separated oak, pine
and poplar, hemlock, etc. I could tell one from another. I ob-
served what kind of board this was on the platform that broke
with me. It was oak. That is the board which I previously laid
out across there myself with help * * * Floyd Moore held one
end of it and I laid it out. My hands were on the other end. No
one had told me to double those boards before stepping on
them. I had never heard anyone say anything about doubling
scaffolding boards before putting weight on them. It was my
intention to double those boards. * * * When the board was
hoisted up to me I untied it from the rope."

Then plaintiff's witness Floyd Moore testified sustantially as
follows: "On the 3rd day of September, 1954, I was working
for Mr. Calvin Edney at Mars Hill * * * I was just helping the
carpenters, just put up lumber and tin and stuff * * * The barn
was 35 to 40 feet high * * * I wouldn't be positive who was
the foreman on there at that time * * * My brother was reach-
ing up boards on the ground to me and Troy Lee (plaintiff)
and we was up on the scaffold together, me and Troy Lee was,
and Troy Lee walked out on the board from where I was at
on the columns and the plank broke with him. He come to the
ground * * * After they took him (plaintiff) on to the hospital,
I went back around where he was working. I saw the board
laying there * * * broke. It was an oak plank and there was a
knot hole in the plank. It was broke. Out kindly around the
knot and kindly slanting like. I just notices that one knot * * *
in the plank. * * * The crack ended some distance on the right
of the knot hole and some distance on the left of the knot
hole * * * ."

Hoover Moore, as witness for plaintiff, testified in pertinent
part: "* * * I was pulling planks up to my brother and Troy.
They were up on the scaffold * * * 20 or 25 feet, somewhere
along there, above the ground. I saw Troy fall. I was pulling
a plank up there and it was nearly up to him. He 'rech' to get
it some way there * * * He was standing on a plank and it
broke * * * I was just getting the boards what I come to and
hoisting them up; just getting them out of the pile. There was
a big pile there * * * it was just lumber is all I know * * * it
looked pretty good in some ways."

Then the witness was asked this question: "Q. Looked sound?
You didn't see anything wrong with this board when you hoisted
it up?", to which he answered: "I was reaching pretty fast.
We were working pretty hard. They just told me to pull them

up to them * * * I don't know exactly how the board broke, it was broke through the middle." And again the witness testified: "I didn't see anything wrong with the board I hoisted up. I was not testing them. I was reaching and getting them out of the pile. I knew they were going to be used for a scaffold. * * * I was getting them as I come to them."

At the close of plaintiff's evidence, motion of defendant for judgment as of nonsuit was allowed. Plaintiff excepted thereto, and from judgment in accordance therewith plaintiff appeals to Supreme Court and assigns error.

*Henry C. Fisher, Lee & Marler for plaintiff appellant.*
*George Pennell, Clyde M. Roberts, Ward & Bennett for defendant appellee.*

WINBORNE, C. J.: Careful consideration of the many assignments of error, based upon exceptions to the admission and to the exclusion of evidence, presented on this appeal, fails to disclose error of a prejudicial character.

Indeed, the evidence offered, taken in the light most favorable to plaintiff, giving to him the benefit of every reasonable inference to be drawn therefrom, as is done when considering demurrer to the evidence, G.S. 1-183, is insufficient to make out a case of actionable negligence.

In an action for recovery of damages for injury resulting from actionable negligence, the plaintiff must show: First, that there has been a failure on the part of the defendant to exercise proper care in the performance of some legal duty which the defendant owed plaintiff under the circumstances in which they were placed; and, Second, that such negligent breach of duty was the proximate cause of the injury,—a cause that produced the result in continuous sequence, and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under the facts as they existed. *Whitt v. Rand*, 187 N.C. 805, 123 S.E. 84, and numerous similar cases.

If the evidence fails to establish either one of the essential elements of actionable negligence, judgment as of nonsuit must be affirmed. Whether there is enough evidence to support a material issue is a matter of law. *Mills v. Moore*, 219 N.C. 25, 12 S.E. 2d, 661, and cases cited.

In this connection the obligation of an employer to furnish his employees with reasonably safe appliances, and a reasonably safe place to work, does not impose upon him the duty of supplying instrumentalities in a completed form. Where, under the terms of a contract of employment, the employees are required

to construct an instrumentality, the employer's duty is discharged by furnishing suitable materials with which it may be constructed, and he is not liable for an injury caused by a defect in its construction or adjustment. It is said that this frequently has been held in the case of scaffolds, staging, derricks, and like instrumentalities. 35 Am. Jur. p. 609.

The principles of liability growing out of use of scaffolds, platforms, and walkways are discussed by this Court in *Fowler v. Conduit Co.*, 192 N.C. 14, 133 S.E. 188, in opinion by *Brogden, J.* In this case plaintiff was injured when an unloading platform which he had helped erect collapsed under weight of lumber loaded from a standing boxcar. The Court said: "In our examination of the authorities in this State, relating to loaders, platforms and walkways, there is found no direct decision dealing with the question of a platform or walkway actually constructed by the party injured, and the effect this would have upon his right to recover. There are, however, in several of the cases referred to, statements to the effect that the party injured had no part in constructing the instrumentality causing the injury. These intimations are strong and suggestive; and, while it may be urged that they involve only negative reasoning, there are cases in other jurisdictions expressly holding that when the injured party himself constructs the platform causing the injury, in his own way, and the employer has exercised due care in furnishing reasonably fit and suitable material therefor, no recovery can be allowed. The principle is thus declared in *Lagler v. Roch.* (Ind.) 104 N.E. 111, 'When the master in person or by another, provides or undertakes to build for the use of his servants a scaffold or like structure, and turns it over to such servants in a completed or supposedly completed stage for their use in prosecuting their work for the master, it is undoubtedly his duty to exercise reasonable care to see that it is reasonably safe for the contemplated purposes. But, where the master has used reasonable care in the selection of materials from which to erect such a structure with design and purpose that the servants shall build it for their own use, and where the servants, with knowledge of such purpose and design, erect such structure from such material in such a manner as their own judgment dictates to them, the master having no direction or control of such construction, he cannot be held liable for injury sustained by one of such servants by reason of defects in such structure growing out of the manner of the construction thereof.' Of course, it must be conceded that the age (17½ years) and experience of a plaintiff and his capacity to observe and appreciate danger, must be considered in applying the rules of liability for injuries in such cases * * * There

is no evidence in this record that the plaintiff was inexperienced in unloading cars of lumber, or that he did not possess the capacity to reasonably apprehend and appreciate any danger that might be incident thereto."

In the light of these principles, applied to factual situation in hand, it is seen that plaintiff himself was in the process of constructing the scaffold, and was in position to observe the materials he himself was using, and had opportunity to make examination of the materials. And the board, which broke under his weight, looked to him "like a sound board. There was nothing discoverable by looking at it." And there is no evidence to indicate that Edney, the owner, could have anticipated that plaintiff, weighing approximately 180 pounds, would step on a board of the dimensions shown. Indeed defendant argues and contends, and this Court holds properly so, that there is an absence of negligence on the part of Edney proximately causing the injury sustained by plaintiff.

But if it be conceded that there is evidence of such negligence, plaintiff, 21½ years of age, weighing 180 pounds, experienced in handling of lumber of various kinds, in a place of his own choosing, by his own negligence contributed to his injury.

Cases cited and relied upon by plaintiff have been considered and found to be distinguishable from instant case.

For reasons stated, the judgment as of nonsuit from which appeal is taken will be, and it is hereby

Affirmed.