**Robert WEBB, Jr., Appellant,**

v.

**OLD SALEM, INC., Appellee.**

**No. 13060.**

United States Court of Appeals Fourth Circuit.

Argued May 9, 1969.

Decided Sept. 24, 1969.

**224**

Eugene H. Phillips, Winston-Salem, N. C., for appellant.

J. R. Elster, Winston-Salem, N. C. (R. M. Stockton, Jr., and Hudson, Petree, Stockton, Stockton & Robinson, Winston-Salem, N. C., on brief), for appellee.

Before SOBELOFF, CRAVEN and BUTZNER, Circuit Judges.

CRAVEN, Circuit Judge:

In this diversity jurisdiction case, Robert Webb, Jr., a Virginia citizen, sought damages for injuries sustained in his fall from a scaffold claimed to have been negligently erected by agents of Old Salem, Inc., a North Carolina corporation. The primary question presented on Webb's appeal from the district court's denial of recovery is one of contract interpretation. We read the contract differently than did the district judge, and reverse.

Old Salem, Inc., a charitable corporation engaged in the restoration and maintenance of buildings, furnishings, and other objects typifying the Colonial Period, sought to engage Webb's services in restoration work. After a tour of the two rooms proposed to be restored, Webb suggested the following terms:

> "I propose the following on or about May 1st, 1964, I will pay my own expenses and supply the materials to do the restoration of the rooms that you choose to have restored for the sum of $100.00 per day including Saturdays and Sundays. *You are to furnish and pay for the scaffolding and one or two painters to assist me in the work as necessary.* I estimate it will take about six weeks to do the work." (Emphasis added.)

These terms were accepted by Old Salem, which, in turn, contracted with one H. H. Parker, an independent paint contractor, to provide scaffolding and two assistants for Webb.

Beginning when he was 14 years old, and continuing steadily until he was 66, Robert Webb worked at painting and restoration of murals and building interiors. For about 20 years he was superintendent of painting and decoration of the Colonial Williamsburg restoration project. Though sometimes required to use a scaffold to reach his selected work

area, never in his long career had Webb erected or moved scaffolding into place.

The Old Salem work was begun and progressed for some six or seven days with the helpers taking painting direction from Webb, and moving two scaffolds when and where he told them. When need developed for an additional, third, scaffold, the helpers assembled it from parts which were provided by H. H. Parker, and moved it into place. As Webb stepped from a scaffold in prior use onto the new one placed beside it, the plywood surface of the latter pivoted under his weight, one end flying up into the air and the end on which he stepped dropping down so that he fell to the floor inside the supporting legs of the structure. In his fall he sustained five rib fractures. The district judge found as a fact, and nothing in the record is to the contrary, that the cause of the accident was negligent assembly of the scaffold.

In his suit against Old Salem for negligence, Webb's theory was that under their contract, Old Salem assumed the duty of safely erecting the scaffolds. Old Salem's position was that the terms of the contract were fulfilled upon their providing non-defective though unassembled scaffolding material and two competent assistants to erect and move it; and that the details of its erection were to be supervised by Webb himself.

The district court, denying Webb relief, held that he could not recover for negligence in assembling the scaffold since he was himself responsible for supervising the assembly. Additionally, the district judge concluded that there was no agency relationship between Old Salem and the two workmen, and that their negligence could support no action against the corporation as they were the employees of an independent contractor. These conclusions of the district court followed upon its interpretation of the contract to mean that reasonably safe and proper erection of the scaffolding was "not a duty imposed by the contract." We are left with the definite and firm conviction that the interpretation was a mistaken one. Whether viewed as a finding or conclusion of law, it is clearly erroneous. Fed.R.Civ.Proc. 52(a). *See* United States v. United States Gypsum Co., 333 U.S. 364, 394–395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

We think the proper construction to be given the pertinent part of the contract between the parties is that Old Salem was to assume two duties: "to furnish and pay for the scaffolding," and "to furnish and pay for * * * one or two painters to assist me in the work as necessary." Though one meaning of "scaffolding" as defined in Webster's Third New International Dictionary (1961) is "materials for scaffolds," the first definition is "a system of scaffolds." On the whole record, we conclude that "a system of scaffolds" was clearly the meaning contemplated by the parties.

Webb was no ordinary painter working under contract, who might properly be thought willing to assume the more menial burdens of setting up his working environment, such as constructing mechanical contrivances for his own elevation to the work area. Instead, he was a uniquely skilled artisan, sought after for his expertise in restoration and in teaching subordinates and directing their work on restoration projects. The record does not reveal a single instance of his inspecting, or testing the scaffolding provided for him, or of his instructing his helpers on handling or erecting the scaffolding. Instead, the record shows that it was his customary practice to indicate *where* and *when* he wanted scaffolding, and confidently to ascend it when it was provided for him. The 66-year-old Webb had never erected scaffolding nor moved it into place in his life. We think it plain that he never intended to assume the burden for doing so at this late date in his career. Webb's background and method of operation were well known to Old Salem. It seems to us very unlikely that the company intended to pay handsome remuneration to an artist who would then

spend even a part of his time in the occupation of a relatively unskilled carpenter.

Old Salem urges us to construe against Webb any ambiguity in the term "scaffolding," as it was he who drew the contract. This rule of construction has been said to be the last and least favored of all, to be relied upon only when all other rules of construction have failed. Simpson, Contracts § 102 at 213 (2d ed. 1965). A less restrictive view of the usefulness of this rule nonetheless relegates it to secondary status, 4 Williston, Contracts § 621 at 760 (3rd ed. 1961), along with numerous other secondary rules, to be relied upon only if "after all possible light has been obtained from surrounding circumstances, usages, the nature of the business, and the object of the bargain, it is still uncertain what the contract legally means." *Id.* at § 619. We do not find such lingering uncertainty here. Giving the words of this contract their plain and normal meaning, we conclude that Old Salem, upon acceptance of Webb's offer, assumed the duty of providing reasonably safe structures upon which Webb could work.

Chambers v. Edney, 247 N.C. 165, 100 S.E.2d 343 (1957), is applicable, we think.

> " 'When the master in person, or by another, provides or undertakes to build for the use of his servants a scaffold or like structure, and turns it over to such servants in a completed or supposedly completed stage for their use in prosecuting their work for the master, it is undoubtedly his duty to exercise reasonable care to see that it is reasonably safe for the contemplated purposes.' " 100 S.E.2d at 348, quoting Lagler v. Roch, 57 Ind. App. 79, 104 N.E. 111.

Here we think the master—Old Salem—by H. H. Parker and his men, undertook to build scaffolds for the use of Webb, and to turn them over to him in a completed stage for his use in the prosecution of Old Salem's work, and that therefore Old Salem was under a duty to see that they were reasonably safe for that purpose. That Old Salem elected to perform this contractual duty by hiring one who was generally an "independent contractor" does not mean that Old Salem is insulated from liability. One who has a duty may not avoid it by selection of another to perform.

The situation here is not the same as the usual construction industry relationship. The difference is that under the contract Old Salem assumed a special nondelegable duty to Webb. Thus, the general North Carolina rule that the employer is not liable for the negligent acts of an independent contractor has no applicability. Old Salem is responsible for the negligence of its agents in performing the contractual duty of erecting the scaffold whether those agents be labeled independent contractors or servants. On remand the district court will determine Webb's damages and allow recovery from Old Salem.

Reversed and remanded.